**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTHONY DIXON,** | : | |
| | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | **No. 2:18-cv-05403-JD** |
| | : | |
| **v.** | : | |
| | : | |
| **OFFICER SCOTT SCHWEIZER, et al.,** | : | |
| | : | |
| **Defendants** | : | |
| | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2019, upon consideration of
Defendants' Motion for Summary Judgment, it is **HEREBY ORDERED** that the Motion is
**GRANTED** and that Plaintiff's claims are dismissed **WITH PREJUDICE**.

BY THE COURT:

_____
, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANTHONY DIXON,** | : |
| | : |
| | :   **CIVIL ACTION** |
| **Plaintiff,** | :   **No. 2:18-cv-05403-JD** |
| | : |
| **v.** | : |
| | : |
| **OFFICER SCOTT SCHWEIZER, et al.,** | : |
| | : |
| **Defendants** | : |
| | : |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Scott Schweizer, Eric Pross, Michael Szelagowski, and the City of Philadelphia, by and through the undersigned counsel, hereby move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support of this motion, Defendants incorporate the attached memorandum of law. Defendant respectfully requests that this Court dismiss the claims asserted against it with prejudice.

Date:  September 27, 2019                    Respectfully submitted,

                                                               /s/ Andrew F. Pomager
                                                              Andrew F. Pomager
                                                              Assistant City Solicitor
                                                              Pa. Attorney ID No. 324618
                                                              City of Philadelphia Law Department
                                                              1515 Arch Street, 14th Floor
                                                              Philadelphia, PA 19102
                                                              215-683-5446 (phone)
                                                              215-683-5397 (fax)
                                                              andrew.pomager@phila.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|                                         |   |                          |
|-----------------------------------------|---|--------------------------|
| **ANTHONY DIXON,**                      | : |                          |
|                                         | : |                          |
|                              **Plaintiff,** | : | **CIVIL ACTION**     |
|                                         | : | **No. 2:18-cv-05403-JD** |
|                                         | : |                          |
| **v.**                                  | : |                          |
|                                         | : |                          |
| **OFFICER SCOTT SCHWEIZER, et al.,**    | : |                          |
|                                         | : |                          |
|                           **Defendants**    | : |                      |
|                                         | : |                          |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Scott Schweizer, Erik Pross, Michael Szelagowski, and the City of Philadelphia (the "City"), hereby file this Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**I.     BACKGROUND**

Plaintiff Anthony Dixon initiated this action on December 13, 2018, alleging the Defendants violated his civil rights during the course of his January 19, 2018 arrest and subsequent prosecution. See generally Compl. (ECF No. 1). Upon filing an Amended Complaint, Plaintiff pled the following claims against Defendants:

> Count 1, Malicious Prosecution under 42 U.S.C. § 1983;

> Count 2, "Supplemental State Law Claim: Malicious Prosecution (42 U.S.C. § 1983)";

> Count 3, False Arrest under § 1983;

> Count 4, False Arrest under Pennsylvania law;

> Count 5, Excessive Force under § 1983, as to Szelagowski and Pross only;

> Count 6, Battery under Pennsylvania law, as to Szelagowski and Pross only;

Count 7, "Assault (42 U.S.C. § 1983)," as to Szelagowski and Pross only;

Count 8, Assault under Pennsylvania law, as to Szelagowski and Pross only;

Count 9, False Imprisonment under § 1983;

Count 10, False Imprisonment under Pennsylvania law;

Count 11, "Unjustified Search and Seizure (42 U.S.C. § 1983)";

Count 12, Conspiracy under § 1983;

Count 13, Conspiracy under Pennsylvania law;

Count 14, Failure to Intervene under § 1983;

Count 15, Failure to Intervene under Pennsylvania law;

Count 16, Municipal Liability, as to the City only.

See Am. Compl. at 18–27 (ECF No. 9).

As to the substantive facts material to the Court's disposition of this motion, Defendant relies upon and incorporates the Statement of Material Facts, and Supplemental Statement of Material Facts (filed under seal) attached to this Motion.

## II.   ARGUMENT

"The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(a). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). When moving for summary judgment, the moving party bears the initial burden of identifying those portions of the record that he believes demonstrate the absence of material fact disputes. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In a case where the non-moving party is the plaintiff and therefore bears the burden of proof, the non-moving party must, by affidavits or by the depositions and admissions on file, "make a showing sufficient to

2

establish the existence of [every] element essential to that party's case." Id. at 322–24. The plaintiff must show there is more than some metaphysical doubt as to the material facts. Modaffore v. Owens-Brockway Glass Container, Inc., 643 F. Supp. 2d 697, 699–700 (E.D. Pa. 2009) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

All inferences must be drawn, and all doubts must be resolved, in favor of the non-moving party. Id. at 700 (citing Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)). However, "an inference based on speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." Id. Although all justifiable inferences must be drawn in favor of the non-moving party, the "moving party is entitled to summary judgment where no reasonable resolution of conflicting evidence and inferences therefrom could result in a judgment for the non-moving party." Schwartz v. Hosp. of Univ. of Pa., 1993 WL 153810, at *2 (E.D. Pa. May 7, 1993). "Plaintiff *must present affirmative evidence* in order to defeat [a] properly supported motion for [summary] judgment." Poles v. St. Joseph' s Univ., 1995 WL 542246, at *5 (E.D. Pa. Sept. 11, 1995) (emphasis added).

Self-serving, conclusory affidavits and deposition testimony, standing alone, are only sufficient to withstand a motion for summary judgment if, when compared to other record evidence of record, a rational factfinder could "credit the plaintiff's testimony, despite its self-serving nature." McBride v. Am. Substance Abuse Prof., Inc., 917 F. Supp. 2d 419, 426–27 (E.D. Pa. 2012); see Johnson v. MetLife Bank, N.A., 883 F. Supp. 2d 542, 549 (E.D. Pa. 2012).

### A.     The Court Should Grant Summary Judgment in Favor of Defendants as to Plaintiff's Excessive Force, Assault, and Battery Claims Because Plaintiff Has Failed to Identify the Specific Officer Who Allegedly Tackled Him

To be liable under § 1983, an individual defendant must have personal involvement in the alleged constitutional violation. Evancho v. Fisher, 425 F.3d 347, 353 (3d Cir. 2005). In Sharrar v. Felsing, 128 F.3d 810 (3d Cir. 1997), abrogated on other grounds as recognized in Curley v.

3

Klem, 499 F.3d 199 (3d Cir. 2007), the Third Circuit affirmed summary judgment against the excessive force claim of a plaintiff who alleged that police officers yanked his shoulder out of its socket. Sharrar, 128 F.3d at 821. The Court held that since the plaintiff could not specifically identify which police officers assaulted him, there was no evidentiary basis to hold any of the defendants liable. Id. Likewise, in Taylor v. Brockenbrough, No. 98-6419, 2001 WL 1632146 (E.D. Pa. Dec. 20, 2001), a plaintiff alleged that two police officers stopped him and that one of these officers needlessly struck him in his back and torso. Id. at *1–2. However, the plaintiff could not identify these officers apart from stating that they were African-American males. Id. at *1. Citing Sharrar, the court granted summary judgment "because neither [the plaintiff] nor any witness has been able to identify the exact police officer responsible for [the plaintiff's] alleged beating." Id. at *2. Similarly, common law assault or battery requires the actor be identifiable. Cf. Austin B. v. Escondido Union Sch. Dist., 149 Cal. App. 4th 860, 879 (2007) (dismissing battery claim against certain defendants because "there is no substantial evidence the employee defendants aided and abetted" the battery).

The Court should follow Sharrar and Taylor and grant summary judgment in favor of the Defendants. Despite the fact that discovery has closed, Plaintiff has only adduced evidence that a tall officer, among approximately 12 officers present, tackled him. This situation is analogous to Taylor, where the plaintiff stated that unknown African-American officers struck him, but failed to "identify the exact police officer responsible for [his] alleged beating." Taylor, 2001 WL 1632146, at *2. Given these undisputed facts, the Court should grant summary judgment as to Count 5, Count 6, Count 7, and Count 8,[1] because Plaintiff cannot identify the specific officer who assaulted him.

---

[1] Count 7 is titled "Assault (42 U.S.C. § 1983)." This claim appears, at best, redundant with Counts 5 and 6.

4

**B.**    **The Existence of Probable Cause for Plaintiff's Arrest Defeats Plaintiff's False Arrest, False Imprisonment, and Malicious Prosecution Claim**

Claims for violations of false arrest, false imprisonment, and malicious prosecution brought under § 1983 cannot proceed to trial if probable cause exists for an arrest. See Spiker v. Whittaker, 553 F. App'x 275, 278 (3d Cir. 2014); see also Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Commw. 2010) (holding same for equivalent state-law claims). It is well established that probable cause to arrest "exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002).

The analysis of whether probable cause existed is based upon the objective facts that were available to the officer(s) at the time of the arrest. Lynn v. Christner, 184 F. App'x 180, 183 (3d Cir. 2006). Notably, "[t]he proper inquiry in a 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988). Probable cause is "not a high bar." District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018). A court assessing probable cause should ask whether a reasonable officer considering all the circumstances *could* conclude there was a substantial chance of criminal activity. Id. at 588 (probable cause does not require ruling out innocent explanations for suspicious facts). A court may conclude "that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding" and may enter summary judgment. Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003).

It is clear from a review of the facts on record that there was probable cause to initiate narcotics charges against the Plaintiff. Those facts include:

- Dixon was in a high crime area with a lot of open-air drug sales, where "it's almost unlikely that you won't encounter a person on the next corner selling drugs."

- Dixon concedes drugs were probably being sold on the day of his arrest.

- At the time of his arrest, Dixon was a foot and a half away from Navarro, speaking with him.

- During the time of the investigation, Dixon was greeting other people from the neighborhood.

- Officer Schweizer heard Dixon and Navarro calling out "dope," rock," and "powder."

- Officer Schweizer observed narcotics transactions involving buyers Anthony Waskovich, Keith Torres, Angel Cruz, Robert Ortiz, and Alyssa Wegner.

- Officers recovered narcotics from each of Waskovich, Torres, Cruz, Ortiz, and Wegner.

- Officer Schweizer observed Dixon hand Waskovich, Torres, and Ortiz objects after they gave Navarro money.

- Officer Schweizer observed Navarro go into a lot and hand Waskovich, Cruz, and Wegner objects he retrieved from a lot.

- Powder and crack cocaine was recovered from the lot Navarro had entered.

- Officer Szelagowski recovered narcotics from Dixon.

- On March 12, 2018, Navarro pled guilty to the charge of possession with intent to deliver arising from his arrest.

Even if can be genuinely disputed that Officer Schweizer observed Dixon participate in the transactions, and even if it can be genuinely disputed that narcotics were recovered from Dixon, the fact that Dixon was in a high crime area where drugs were probably being sold, a foot and a half away from Navarro, who indisputably—in light of his guilty plea—was engaging in drug transactions at the time of the investigation, was sufficient to meet the low bar the officers needed for probable cause. Accordingly, Counts 1, 2, 3, 4, 9, and 10 should be dismissed.[2]

## C.     Summary Judgment Should be Granted in Officer Pross's Favor Because Plaintiff Adduced No Evidence He Was Personally Involved In The Alleged Constitutional Violations

As stated, to be liable under § 1983, an individual defendant must have personal involvement in the alleged constitutional violation. Evancho, 425 F.3d at 353. Plaintiff can point to no evidence of record indicating Officer Pross, who made no observations of narcotics transactions and reported no observations of narcotics transactions, was personally involved in the arrest or prosecution of Plaintiff, and summary judgment therefore should be entered for him.

## D.     Plaintiff Has Adduced No Facts to Support His Failure to Intervene Claim

A police officer must take reasonable steps to protect an individual from another officer's use of excessive force. Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002). An officer can only be liable if there is a "realistic and reasonable opportunity to intervene." Id. In Plaintiff's case, he testified an officer tackled him as he was preparing to comply with the officer's orders. While the timing of this alleged "tackling" is not clear, the only reasonable inference is that the

---

[2] Even if the Court does not find that no reasonable jury could find probable cause wanting, Plaintiff's false imprisonment claims  (Counts 9 & 10). Should be dismissed because they are duplicative of Plaintiff's false arrest claims in Counts 3 & 4. See, e.g., Olender v. Twp. of Bensalem, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999).

7

tackling occurred rapidly. Moreover, there is no evidence that the named Defendants were on hand to prevent the tackling at the time it occurred. Accordingly, Plaintiff will be able to point a jury to no facts that would support that the Defendants had a realistic and reasonable opportunity to stop the unidentified officer from tackling Plaintiff, so as to support his failure to intervene claim (Count 14).[3]

   **E.    Plaintiff Has Adduced No Evidence That He Was Subjected to an Unreasonable Search**

To recover for an allegedly illegal search and seizure, the plaintiff must prove they were illegal. See Gresh v. Godshall, 170 F. App'x 217, 220 (3d Cir. 2006). In his Amended Complaint, Plaintiff alleged he was searched without probable cause and had "non-incriminating evidence" removed from his person. As the record has adduced no additional evidence indicating the manner of his search was unreasonable, Plaintiff's claim appears to turn on whether probable cause existed to conduct a search incident to arrest. As stated above, the Defendants had ample facts supporting probable cause, and, accordingly, the search was legal. See Joseph v. W. Manheim Police Dep't, 131 F. App'x 833, 835 (3d Cir. 2005) (search constitutional where it followed a valid arrest supported by probable cause). Accordingly, Count 11 should be dismissed.

   **F.    Plaintiff Has Adduced No Evidence To Support a Conspiracy Claim**

To state a claim for conspiracy under § 1983, a plaintiff must allege "(1) the existence of a conspiracy involving state action; and (2) a deprivation of rights in furtherance of the conspiracy by a party to the conspiracy." Disco v. Roth, No. 17-4132, 2018 WL 3387381, at *7 (E.D. Pa. July 12, 2018). To prevail on a conspiracy claim, the plaintiff must prove that the conspirators "reached an understanding" and had a "meeting of the minds" to deprive the

---

[3] Counsel could find no authority to support the existence of a Pennsylvania common law cause of action for a police officer's "failure to intervene" (Count 15).

plaintiff of his constitutional rights. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970); see also Burnside v. Abbott Laboratories, 505 A.2d 973, 980 (Pa. Super. 1985) ("A [Pennsylvania] cause of action for conspiracy requires that two or more persons combine or enter an agreement to commit an unlawful act or to do an otherwise lawful act by unlawful means"). Once again, now that Plaintiff is well past the pleading stage, the evidentiary record leaves only the unsubstantiated allegations in the Amended Complaint to support his claims. He has adduced no evidence that the Defendants reached an understanding to deprive him of his rights. Instead, Plaintiff's claim appears to rest on the grounds that, because he was allegedly falsely arrested and multiple officers were involved in the narcotics investigation, they all must have conspired against him. This is sheer speculation, and, patently at odds with his central theory that Officer Schweizer, the eyes of the investigation, fabricated his multiple narcotics transactions, next to an individual who was convicted for selling drugs, out of whole cloth. Plaintiff's conspiracy claims (Counts 12 & 13) should be dismissed.

> **G.** **Plaintiff's State Law Claims Against the City are Barred by The Pennsylvania Tort Claims Act**

The Pennsylvania Tort Claims Act generally bars individuals from suing municipalities. 42 Pa. Cons. Stat. § 8541. A plaintiff cannot bring a negligence claim against a Pennsylvania municipality unless one of the eight exceptions set forth in § 8542 of the Tort Claims Act applies to his case. 42 Pa. Cons. Stat. § 8542(b) (permitting eight types of negligence suits, such as suits involving "vehicle liability"). Specifically, Pennsylvania municipalities, including the City, are immunized from intentional tort claims of false arrest, false imprisonment, and malicious prosecution. See Jenkins v. City of Philadelphia, No. 15-3271, 2015 WL 5585186, at *2 (E.D. Pa. September 23, 2015) (dismissing such claims against, inter alia, the City, based on its immunity). Given the clear applicability of this Pennsylvania statutory immunity to the state law

claims brought against the City here, the Court should dismiss the Pennsylvania state law claims against the City.

> **H.     Plaintiff's Allegations Concerning Isolated and Dated Disciplinary Investigations into the Defendants Does Not Support a Municipal Liability Claim**

In Count 16 of the Amended Complaint, Plaintiff asserts a claim against the City pursuant to Monell v. Department of Social Services of New York City, 436 U.S. 658 (1978).  In addition to a host of pleading deficiencies, there is no record evidence to support this claim and the City must be dismissed from this lawsuit.

In Monell, the United States Supreme Court established that a municipality cannot be held liable on a *respondeat superior* theory.  Instead, liability can only be imposed against a municipality when there is evidence that a constitutional violation by a municipal actor resulted from a municipal policy, custom or practice.  See Monell, 436 U.S. at 691–95.  Put differently, courts adjudicating Monell claims "have recognized a two-path track to municipal liability under § 1983, depending on whether the allegation is based on municipal policy or custom." Mulholland v. County of Berks, 706 F.3d 227, 237 (3d Cir. 2013) (citations and quotations omitted).  A policy occurs when a decisionmaker with final authority "issues an official proclamation, policy, or edict," while a custom occurs when practices are "so permanent and well-settled as to virtually constitute law."  See id. (citations and quotations omitted); see also Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (superseded by statute on other grounds).

Further, municipal liability attaches only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  Monell, 436 U.S. at 694.  Before municipal liability will be imposed, the plaintiff must prove that the municipality's alleged practices are "*so*

10

*widespread as to have the force of law.*" Bd. of Cty. Commrs. of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997) (emphasis added); accord, Beck v. City of Pitt., 89 F.3d 966, 971 (3d Cir. 1996); Andrews, 895 F.2d at 1480. "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986) (emphasis in original). "[T]o be sure, 'official policy' often refers to formal rules or understandings – often but not always committed to writing – that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." Id. at 480-81.

In order to prevail on a *Monell* claim, the plaintiff must establish "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989). Significantly, this "link" must be so direct as to establish that the allegedly deficient policy or custom was the "*moving force*" behind the plaintiff's alleged injury. Brown, 520 U.S. at 407-08 (emphasis added); see also Robinson v. City of Phila., No. 15-1574, 2015 WL 5965003, at *11 (E.D. Pa. Oct. 13, 2015).

Finally, beyond identifying an offending policy or custom and the way in which it led to a violation of a plaintiff's rights, a plaintiff must demonstrate that an official with the power to make policy (i.e. a municipal "policymaker") is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom. See Andrews, 895 F.2d at 1480. A Monell claim can only proceed if record evidence establishes that such policymaker was aware of similar unlawful conduct in the past but – with deliberate indifference – failed to take precautions against future violations, the failure of which directly led to the plaintiff's injury. See, e.g., Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990).

Here, Plaintiff's <u>Monell</u> claim against the City fails for a host of reasons.

          1.      <u>Plaintiff's Failure to Establish an Underlying Constitutional Violation Necessitates the Dismissal of his *Monell* Claim.</u>

Plaintiff's <u>Monell</u> claim fails for a number of reasons, the first being the fact that Plaintiff cannot prevail on any of his underlying claims against Schweizer, Pross, or Szelagowski. In order to maintain a claim for municipal liability, Plaintiff must first establish a constitutional violation by a municipal actor. <u>See</u>, *e.g.*, <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 798-99 (1986); <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1212 n.26 (3d Cir. 1995) (§ 1983 claim cannot stand if the underlying constitutional claim is invalid); <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1149-50 (3d Cir. 1995) (unless plaintiff establishes a constitutional injury, it is irrelevant for purposes of § 1983 liability whether the municipality's policies caused an injury), <u>cert denied</u> 516 U.S. 858 (1995).

Here, Plaintiff's claims against Schweizer, Pross, and Szelagowski fail as a matter of law for the reasons already stated, and, in particular, because probable cause existed to support Plaintiff's arrest and prosecution. Because no underlying constitutional violation occurred, Plaintiff's *Monell* claim must also fail.

          2.      <u>Plaintiff has Adduced No Evidence of a Municipal "Policy" or "Custom" that Caused his Alleged Harms.</u>

Plaintiff's claim against the City also fails because his <u>Monell</u> allegations – nearly all of which are so generic and conclusory as to be rendered meaningless – are wholly unsupported by the record. Plaintiff's Amended Complaint alleges that the City is liable for everything that a municipality could *possibly* be liable for, including, *inter alia*, the following:

- "[D]evelop[ing] and maintain[ing] policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons in the City []";

- Employing a "policy and/or custom . . . to cover-up and avoid detection of improper and illegal police activity";

- Employing a "policy and/or custom . . . to fail to sufficiently supervise against, train, and/or retrain against, and sufficiently discipline against illegal police activity";

- Having "encouraged, tolerated, ratified, and [having] been deliberately indifferent to" all imaginable practices, policies, and/or customs that a police department could possibly employ, including the "failure" of police to properly follow policies and procedures regarding securing search warrants, use of arrest powers, refusal of police to intervene in other officers' violations of rights, the failure to identify or take remedial or disciplinary action against narcotics officers, and the existence of a code of silence;

- Failures in training, supervision, and discipline of narcotics officers "who have engaged over a period of many years in systematic abuses of authority"; and

- A multitude of failures of the PPD Internal Affairs Division to "provide an internal disciplinary mechanism that imposes meaningful disciplinary and remedial actions."[4]

See Amended Compl., at ¶¶ 124–145.

These allegations are unquestionably generic and conclusory. And more importantly, not a single one of them is supported by the record. Indeed, there is not a shred of record evidence in

---

[4] It would be impossible for Defendants to summarize all of Plaintiff's *Monell* allegations while still having space on the allotted pages to draft a memorandum of law, but a even a cursory review of Plaintiff's Amended Complaint demonstrates the patent inadequacy of *all* such allegations as they are all mere legal conclusions.

this matter which even plausibly illuminates any deficiency in PPD training, supervision, or discipline, let alone that supports the litany of conclusory deficiencies Plaintiff alleges.[5]

In fact, the only Monell allegations Plaintiff makes for which there is any record evidence on the topic itself are Plaintiff's allegations as to Officer Schweizer's disciplinary history as a PPD officer.   Once again, however, Plaintiff's characterizations of Officer Schweizer's past discipline are incorrect.  On the contrary, the record unequivocally indicates that:

(1) Officer Schweizer, a PPD veteran for over 20 years, has only been found to have violated policies and/or procedures 4 times during those 20 years;

(2) The most recent incident for which Officer Schweizer was disciplined occurred in 2011, was not the result of a citizen's complaint or any allegation pertaining to the rights of a citizen, and involved a situation where he was one of 5 officers who received training and counseling for failing to secure an unidentified firearm; and

(3) the most recent incident where Schweizer was found to have acted impermissibly towards a citizen was in 2004 when he used profanity during a tense encounter.

The nearly spotless nature of Schweizer's disciplinary history over the past decade suggests that Plaintiff will attempt to rely on the two incidents for which Schweizer received discipline in 1999 (making what IAB determined to be a false statement following a situation

---

[5] Plaintiff's Amended Complaint also includes a short list of alleged incidents of PPD misconduct dating back to the early 1980s and 1990s, with unsubstantiated allegations of wrongdoing based on newspaper articles "in the last five years."   In that section, Plaintiff also alleges that two PPD officers with the last name "Snell" – with no alleged connection to the officers in this case – were convicted of drug crimes in 2009 and 2017, respectively.  See id. at ¶ 128.  These allegations are insufficient on their face to support a Monell claim because Plaintiff pleads no facts whatsoever establishing any nexus between those incidents and his alleged harms, nor can any such nexus be discerned.

Far more importantly, however, Plaintiff has not adduced even a scintilla of record evidence supporting any of these allegations and none of them thus constitute Monell evidence.

that did not even involve an arrest) and 2008 (having offensive stickers inside his unlocked locker). These incidents, however, are not only completely unrelated to Plaintiff's allegations in the instant case, but *the more recent* of them occurred more than 11 years ago, and thus pre-dated Plaintiff's arrest by over 10 years.  See id.

A Monell claim can only proceed if the complaint pleads facts demonstrating that the municipality, through its *deliberate* conduct, was the *moving force* behind the alleged injury. Robinson v. City of Phila., No. 15-1574, 2015 WL 5965003, at *11 (E.D. Pa. Oct. 13, 2015) (emphasis added) (quoting Bd. Of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997)).  This requires some temporal proximity between the underlying incident in the instant case and the past incidents which comprise the alleged municipal practice or custom.  When the incident at issue occurs *five or more years after* the last-known similar (for Monell purposes) incident, the standards for Monell liability are not satisfied.  See, e.g., Watson v. Abington Twp., 478 F.3d 144, 156-57 (3d Cir. 2007) (an incident 5 years before the incident at issue was insufficient to create inference of any municipal custom because the incidents were too remote in time from each other); abrogated on other grounds, Miles v. Twnship. of Barnegat, No. 05-1661, 2008 WL 89910, at *3 (D.N.J. Jan. 7, 2008); see also Doe v. Allegheny Cty., No. 10-1761, 2013 WL 1290686, at *12 (W.D. Pa. Mar. 27, 2013) (2004 incidents of correctional staff sexual assaults were too remote in time from alleged 2010 correctional staff assault to evidence a custom or practice).  Here, the incidents in which Schweizer received discipline are far too temporally removed from the instant case to give rise to a claim against the City.

Nearly as important, Schweizer has never been disciplined for, or otherwise found by PPD to have engaged in, conduct remotely similar to that alleged by Plaintiff in the instant case. As mentioned above, the last time Schweizer was disciplined for conduct pertaining to his

actions *towards a citizen* was in 2004 and involved the use of offensive language, which is *not* a cause of action in this case. And the record demonstrates that Schweizer has *never* been found to have improperly arrested a suspect, fabricated evidence against a suspect, or used excessive force against a suspect. Because Officer Schweizer has never engaged in factually similar conduct to that alleged here, there is no basis to conclude that his continued work as a police officer is the "proximate cause" of Plaintiff's alleged harms. See, e.g., Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) ("A plaintiff bears the additional burden of proving that the municipal practice was the proximate cause of the injuries suffered.  To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue.") (citations omitted).

And finally, on the four occasions Schweizer was found by IAB to have done something wrong, he received meaningful discipline. In the 2008 incident involving Schweizer's police locker, PPD—despite the fact that the incident did not involve conduct with a citizen or any violation of a citizen's rights—suspended Schweizer without pay for 20 days and took the extreme step of permanently transferring him from his elite narcotics squad to the 24th police district, where he has remained since.[6] Additionally, in the course of the investigation into that incident, IAB conducted a "profile check" of all of Schweizer's prior vehicle and pedestrian investigations for a two-year period, to examine whether he had engaged in racial profiling. After conducting that profile check, IAB determined that Schweizer's policing activities were not consistent with racial profiling.  These facts directly cut *against* any notion that the City exhibited deliberate indifference by failing to supervise and/or discipline its police officers.

---

[6] Schweizer also received an unpaid 5-day suspension for the 1999 incident in which he was found guilty of conduct unbecoming of an officer, and an unpaid 1-day suspension for the 2004 incident in which he was found to have used offensive language.

3.    Plaintiff has Adduced No Evidence of Deliberate Indifference on the Part
      of Any Municipal Policymaker.

Another glaring issue compelling the dismissal of Plaintiff's Monell claim is the complete absence of record evidence that any City of Philadelphia policymaker was deliberately indifferent to a risk of harm to Plaintiff or similarly situated persons resulting from Schweizer's employment with PPD.[7]  As explained by the Third Circuit, "absent the conscious decision or deliberate indifference of some natural person, a municipality, as an abstract entity, cannot be deemed to have engaged in a constitutional violation by virtue of a policy, a custom, or a failure to train." Simmons v. City of Phila., 947 F.2d 1042, 1063 (3d Cir. 1991) (superseded by statute on other grounds). It thus follows that to prevail on a § 1983 claim against a municipality, the plaintiff must identify an official with policy-making authority who is directly responsible for the policy or custom which allegedly violated the plaintiff's rights.  See, e.g., Jett v. Dallas Ind. School Dist., 491 U.S. 701, 737 (1989) (plaintiff must prove decision of final policymaker caused the deprivation of rights by policies or by acquiescence in a longstanding custom or practice that constitutes a standard operating procedure of the local governmental entity); see also Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). Once a policymaker is so identified, "plaintiffs must 'present *scienter-like evidence of indifference* on the part of [such] policymaker." Beswick v. City of Phila., 185 F. Supp. 2d 418, 427 (E.D. Pa. 2001) (emphasis added).  Liability can only attach if record evidence demonstrates that the policymaker has made a deliberate choice to follow a particular course of action from among various alternatives. See Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).

---

[7] Based on the allegations in the Amended Complaint, and questions asked at depositions, Plaintiff's Monell theory – insofar as it is based on a failure to supervise or discipline – appears limited to PPD's alleged failures involving Officer Schweizer only.  In the event Plaintiff contends otherwise in his response, Defendants will address this in a Reply brief.

Here, no such evidence exists.   There is no "scienter-type evidence" of deliberate indifference on the part of any individual who could constitute a PPD policymaker, nor is there evidence that any such person chose to follow a particular course of action among a group of alternatives. This is especially evident because the incidents giving rise to Schweizer's discipline in 1999 and 2008 occurred under PPD Commissioners John Timoney and Sylvester Johnson, respectively, who preceded Commissioner Ross[8] by multiple administrations. It is hard to fathom any scenario in which a police commissioner could be found to have acted with *scienter-like indifference* in these circumstances.

## III.    CONCLUSION

For all the foregoing reasons, the Defendants respectfully request this Court grant their motion for summary judgment and enter judgment in their favor.

Date:  September 27, 2019                              Respectfully submitted,

                                                       /s/ Andrew F. Pomager
                                                      Andrew F. Pomager
                                                      Assistant City Solicitor
                                                      Pa. Attorney ID No. 324618
                                                      City of Philadelphia Law Department
                                                      1515 Arch Street, 14th Floor
                                                      Philadelphia, PA 19102
                                                      215-683-5446 (phone)
                                                      215-683-5397 (fax)
                                                      andrew.pomager@phila.gov

---

[8] Commissioner Ross assumed office in 2016 and was still the Commissioner on the date of Plaintiff's arrest.

18

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTHONY DIXON,** | : | |
| | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | **No. 2:18-cv-05403-JD** |
| | : | |
| **v.** | : | |
| | : | |
| **OFFICER SCOTT SCHWEIZER, et al.,** | : | |
| | : | |
| **Defendants** | : | |
| | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date below, Defendants Motion for Summary Judgment was filed via the Court's electronic filing system and is available for downloading.


Date:  September 27, 2019                     Respectfully submitted,

_/s/ Andrew F. Pomager_____
Andrew F. Pomager
Assistant City Solicitor
Pa. Attorney ID No. 324618
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5446 (phone)
215-683-5397 (fax)
andrew.pomager@phila.gov