| | | |
|---|---|---|
| Anthony Dixon, | : | **United States District Court** |
| **PLAINTIFF,** | : | **Eastern District of Pennsylvania** |
| v. | : | |
| Scott Schweizer, Erik Pross, et al., | : | **Civil Division** |
| **DEFENDANT.** | : | **2:18-cv-5403** |

## ORDER

AND NOW, this _____ day of _____, 2019, it is hereby **ORDERED** and

**DECREED** that after consideration of the Defense's Motion for Summary Judgment and the

Plaintiff's Response hereto, the Defense motion is **DENIED** and the Plaintiff's requested relief is

**GRANTED**.


**BY THE COURT**:


_____

**U.S. District Judge Jan E. DuBois**

| Anthony Dixon, | : | **United States District Court** |
| **PLAINTIFF,** | : | **Eastern District of Pennsylvania** |
| v. | : | |
| **Scott Schweizer, Erik Pross, et al.,** | : | **Civil Division** |
| **DEFENDANT.** | : | **2:18-cv-5403** |

### PLAINTIFF ANTHONY DIXON'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, Anthony Dixon, respond to the Defendants' Motion for Summary Judgment, via undersigned Counsel, and hereby move in opposition to summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support of this response, Plaintiff Dixon incorporates the attached memorandum of law. Plaintiff Dixon respectfully requests this Court deny the Defendants relief and schedule this matter for a 12-person jury trial.

Respectfully Submitted,
CORNERSTONE LEGAL GROUP

By: /s/ D. Wesley Cornish, Esquire
D. Wesley Cornish, Esquire
Pennsylvania Supreme Court # 310865
230 South Broad Street, 17th Floor
Philadelphia, PA 19102
Tel:    212-444-2039
**Attorney for Plaintiff**
November 6, 2019

| Anthony Dixon, | : | **United States District Court** |
| **PLAINTIFF,** | : | **Eastern District of Pennsylvania** |
| v. | : | |
| Scott Schweizer, Erik Pross, et al., | : | **Civil Division** |
| **DEFENDANT.** | : | **2:18-cv-5403** |

## PLAINTIFF ANTHONY DIXON'S MEMORANDUM OF LAW IN SUPPORT OF RESPONSE TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, Anthony Dixon, hereby files this response to the Defendants' Motion for Summary Judgment via Federal Rule of Civil Procedure 56.

### I.   Background

Plaintiff Dixon filed a Complaint starting this action on December 13, 2018, alleging Defendants Szelagowski, Pross, City of Philadelphia, and Schweizer violated his constitutional rights stemming from Plaintiff's January 19, 2018 arrest and prosecution. (ECF No. 1). After filing an amended complaint on March 26, 2019, Plaintiff Dixon asserted the following claims:

1. Count 1 – Malicious Prosecution 42 U.S.C. § 1983

2. Count 2 – State Law Malicious Prosecution

3. Count 3 – False Arrest 42 U.S.C. § 1983

4. Count 4 – State Law False Arrest

5. Count 5 – Excessive Force 42 U.S.C. § 1983 (against Pross and Szelagowski)

6. Count 6 – State Law Excessive Force (against Pross and Szelagowski)

7. Count 7 – Assault 42 U.S.C. § 1983 (against Pross and Szelagowski)

8. Count 8 – State Law Assault (against Pross and Szelagowski)

9. Count 9 – False Imprisonment 42 U.S.C. § 1983

10. Count 10 – State Law False Imprisonment

11. Count 11 – Unjustified Search 42 U.S.C. § 1983

12. Count 12 – Conspiracy 42 U.S.C. § 1983

13. Count 13 – State Law Conspiracy

14. Count 14 – Failure to Intervene 42 U.S.C. § 1983

15. Count 15 – State Law Failure to Intervene

16. Count 16 – Monell Municipal Liability (against City of Philadelphia)

*See Plaintiff's Amend Comp*. p. 18-27 (ECF No. 9)

For the substantive material facts for the Court's decision on this motion's disposition,

Plaintiff relies on a hereby incorporates the Statement of Material Facts attached to this motion.

Plaintiff Dixon's response to the Supplemental Material Facts and all other incorporated,

referenced documents, filings, and exhibits.

## II.     Argument

A party may move pursuant to Fed. R. Civ. P. 56(a) "for summary judgment on all or part

of the claim." Here the Defendants have moved for summary judgment on the state and federal

law claims. Fed. R. Civ. P. 56(c) provides that a judgment should be rendered "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."

An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable

jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

(1986). A factual dispute is "material" only if it might affect the outcome of the suit under

governing law. *Id*. All inferences must be drawn, and all doubts must be resolved, in favor of the

non-moving party. *See United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962); *Gans v. Mundy*,

762 F.2d 338, 341 (3d Cir. 1985). "An inference based on speculation or conjecture does not

create a material factual dispute sufficient to defeat entry of summary judgment." *Modaffare v.*

*Owens-Brockway Glass Container, Inc.*, 643 F. Supp. 2d 697, 700 (E.D. Pa. 2009).

When moving for summary judgment, the moving party bears the initial burden of identifying

those portions of the record that he or she believes demonstrate the absence of material fact

disputes. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defeat summary judgment,

the non-moving party must respond with facts of record that contradict the facts identified by the

moving party and may not rest on mere denials. *See id*. at 321 n.3; *First Natl. Bank of Pa. v.*

*Lincoln Natl. Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir. 1987).

> **A.  The Court Should Not Grant Summary Judgment to the Defendants' on the Excessive Force, Assault, and Battery Claims As the Officer who Physically Arrested Plaintiff Was Identified**

To be liable via § 1983, an individual defendant must have personal involvement in the

alleged constitutional violation. *Evancho v. Fisher*, 425 F.3d 347, 353 (3d Cir. 2005) The proper

test for evaluating an excessive force claim is objective reasonableness. *Sharrer v. Felsing*, 128

F.3d 810, 820 (3d Cir. 1997). This objective reasonableness test "requires careful attention to the

facts and circumstances of each particular case, including the severity of the crime at issue,

whether the suspect poses an immediate threat to the safety of the officers or others, and whether

he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490

U.S. 386, 396-97 (1989); *see Sharrer v. Felsing*, 128 F.3d 810, 821 (3d Cir. 1997); *see also*

*Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995).

The Defendants rely on the holding in *Sharrar*, which is not only distinguishable from

the instant matter, but also supports Plaintiff Dixon's position. In *Sharrar*, the court granted a

Defense motion for summary judgment on an excessive force claim because the Plaintiff could

not identify which officer assaulted him and there was no evidentiary basis to hold any of the Defendants liable. *Sharrar v. Felsing*, 128 F.3d 810, 821 (3d Cir. 1997). *Sharrar* is distinguishable from the instant case as Defendant Szelagowski admits he is the officer who made physical contact with Plaintiff Dixon. Szelagowski Deposition p. 21.

The Defense's claims Plaintiff Dixon could only identify a taller white officer as the one as ambiguous are contradicted by their own testimony. Defendant Pross claims he never left the vehicle until after Plaintiff Dixon was arrested. Pross Deposition p. 17. Defendant Schweizer claims he also never left the vehicle until after Plaintiff Dixon was arrested. Schweizer Deposition p. 79. This testimony shows while Defendant Pross did not physically touch Plaintiff as was alleged in Counts 5 and 6 of his Amended Complaint, Officer Szelagowki's conduct was in accordance with those two counts.

Based on these three Defendants testimony clearly Defendant Szelagowski is the only individual who made physical contact with the Plaintiff. Thereby this Court should distinguish the instant matter from *Sharrar* and deny the Defense motion for relief and allow the excessive force and related assault and battery claims to proceed to trial.

**B. No Probable Cause Existed for any of the Defendants to Arrest Plaintiff and Thereby Plaintiff Dixon's False Arrest, False Imprisonment, and Malicious Prosecution Claims**

Claims for violations of false arrest, false imprisonment, and malicious prosecution brought under § 1983 cannot proceed to trial if probable cause exists for an arrest. *See Spiker v. Whittaker*, 553 F. App'x 275, 278 (3d Cir. 2014); *see also Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. 2010) (holding same for equivalent state-law claims). It is well established probable cause to arrest "exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to

conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002).

The analysis of whether probable cause existed is based upon the objective facts that were available to the officer(s) at the time of the arrest. *Lynn v. Christner*, 184 F. App'x 180, 183 (3d Cir. 2006). Notably, "[t]he proper inquiry in a 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). Probable cause is "not a high bar*." District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). A court assessing probable cause should ask whether a reasonable officer considering all the circumstances *could* conclude there was a substantial chance of criminal activity. *Id*. at 588 (probable cause does not require ruling out innocent explanations for suspicious facts). A court may conclude "that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding" and may enter summary judgment. *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003).

It is clear from a review of the facts on the record to conclude genuine issues of question and fact exist to make any determination of probable cause properly a jury issue. Some of the facts supporting making this probable cause determination more properly for a jury than on summary judgment include:

- Defendant Schweizer claims when he first arrived at his observation location, he heard Plaintiff Dixon saying "dope, rock, and powder" whereas Plaintiff Dixon contends he was walking through the area with his common law wife and never said those words on any occasion. Dixon Deposition p. 97.

- Defendant Schweizer claims he observed Plaintiff Dixon, hand Waskovich, Torres, and Ortiz objects after Navarro accepted money from them whereas Plaintiff Dixon claims he never handed any person objects nor accepted money from anyone. Dixon Deposition pgs. 98-99.

- Only Defendant Schweizer, who has a previous disciplinary suspension for lying about a black male in a high crime area engaged in narcotics activity, was the only person who made the alleged observations of the Plaintiff's illegal acts. Schweizer Deposition pgs. 51-52.

- Defendant Schweizer claims to have observed Navarro go into a lot and hand Waskovich, Cruz, and Wegner objects he retrieved from the lot whereas the Plaintiff claims to have never seen Navarro hand any person objects. Dixon Deposition p. 98.

- While Defendant Szelagowski contends narcotics were recovered from Plaintiff Dixon's person the Plaintiff directly disputes this allegation and states he never had possessed any illicit substances at the time in question. Dixon Deposition p. 61.

- Officer Schweizer never saw actual narcotics exchanged. Schweizer Deposition p.77.

- Officer Schweizer could not determine money was exchanged and could not tell any denominations. Schweizer Deposition p. 51.

- Plaintiff never tried to flee, elude, or otherwise hinder his arrest. Szelagowski Deposition pgs. 21-22.

It can be genuinely disputed that Defendant Schweizer observed Dixon participate in the transactions, and that narcotics were ever recovered from him, which forms the basis for making

this an issue for the jury to determine. even if it can be genuinely disputed that narcotics were recovered from and accordingly, Counts 1, 2, 3, 4, 9, and 10 should not be dismissed.

Furthermore, Plaintiff's false imprisonment claims in Counts 9 & 10, should not be dismissed as duplicative of his false arrest claims in Counts 3 and 4. Plaintiff contends he was falsely arrested and charged and as a result of those charges had to serve an extended time of imprisonment pending the resolution of the criminal matter. The resultant imprisonment it is claimed came as a direct and proximate result of the Defendants falsely arresting the Plaintiff.

> **C. Summary Judgment Should Not be Given to Defendant Pross As He was a Member of This Narcotics Investigation and Was Personally Involved in Assisting Defendant Schweizer with Making His Observations**

This Court should not grant summary judgment in Defendant Pross' favor because he was directly involved in the constitutional violations. Defendant Pross remained in the vehicle in plainclothes assisting Defendant Schweizer with his investigation of Plaintiff. Defendant Pross admits he was an officer in radio contact with all others and could hear the radio communications involving all the officers. Defendant Pross thereby had an opportunity upon hearing the actions on radio to intervene and stop Plaintiff's injuries. Pross Deposition p. 16. Furthermore, Defendant Pross testified he was the person who NIK tested all the alleged narcotics recovered in this investigation. Pross Deposition p. 20. The NIK test is what gave these Defendants the conclusive probable cause to detain and recommend criminal prosecution. Defendant Pross' participation in depriving Plaintiff of his was significant and he therefore should not be dismissed as a Defendant in Mr. Dixon's lawsuit.

> **D. Plaintiff Dixon has Provided Ample Evidence to Support his Failure to Intervene Claim**

A law enforcement officer must take reasonable steps to protect an individual from another officer's use of excessive force. *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). A law enforcement agent can only be liable if there is a "realistic and reasonable opportunity to intervene." *Id*. Defendants Schweizer and Pross who were in constant radio communication and were approximately 25 feet away making observations in a vehicle had ample time to stop Defendant Szelagowski from approaching Plaintiff and tackling him. Although Defendant Pross claims he did not observe Plaintiff Dixon get stopped, this is a convenient way for him to avoid liability for this matter. Pross Deposition p. 19. After the narcotics takedown of all suspected sellers was ordered, he was in the vehicle where all the observations were made, and no other persons were being investigated other than those previously described. The same reasoning goes for Defendant Schweizer who remained in the same vehicle which was adjacent to where the Plaintiff was arrested. Based on the testimony by both Defendants Pross and Schweizer they were adjacent and could clearly view where the excessive force was used and did not exit the vehicle to assist and thereby the failure to intervene claims should remain.

### E.  Plaintiff Dixon Has Produced Evidence That He Was Subjected to an Unreasonable Search

To recover for an improper search and search, the Plaintiff must demonstrate it was illegal. *See Gresh v. Goshall*, 170 F. App'x 217, 220 (3d Cir. 2006). This claim is based upon the Defendants lacking probable cause to physically search Plaintiff Dixon because no probable cause existed to initially stop and detain him. As stated throughout this responsive filing, in particular Argument Part B, to demonstrate these Defendants lacked probable cause to stop and search him. Accordingly, Count 11, should not be dismissed on summary judgment.

### F.  Plaintiff Has Produced Evidence to Support a Conspiracy Claim

To make a claim for a conspiracy pursuant to § 1983 a plaintiff must allege "1) the existence of a conspiracy involving state action; and 20 a deprivation of rights in furtherance of the conspiracy by a party to the conspiracy." Disco v. Roth, No. 17-4132, 2018 WL 3387381 (E.D.Pa. July 12, 2018). To prevail on a conspiracy claim, the plaintiff must prove that the conspirators "reached an understanding" and had a "meeting of the minds" to deprive the plaintiff of his constitutional rights. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970); *see also Burnside v. Abbott Laboratories*, 505 A.2d 973, 980 (Pa. Super. 1985)("A [Pennsylvania] cause of action for conspiracy requires two or more persons combine to enter an agreement to commit an unlawful act or do an otherwise lawful act by unlawful means").

Plaintiff Dixon has shown a meeting of the minds which ended in the deprivation of his rights. All the Defendants communicated via radio and agreed to follow and back-up Defendant Schweizer. Furthermore, these Defendants acted in concert and lied to protect their illicit conduct during this narcotics investigation. Defendant Schweizer acted improperly when he claimed Plaintiff Dixon was conspiring to sell narcotics based on his observations. Defendant Szelagowski falsely claimed narcotics were recovered from a box located on Plaintiff's person. Moreover, Defendant Pross falsely claimed the substances Defendant Szelagowski claimed to have recovered from Plaintiff tested positive for illicit narcotics. Plaintiff Dixon being tackled and breaking his ankle present yet another reason these Defendants concocted this story about Plaintiff selling drugs. Thereby based on the foregoing argument this Court should not dismiss Counts 12 and 13.

### G.  Plaintiff Concedes the State Law Claims Against the City of Philadelphia Are Barred Via the Tort Claims Act

Plaintiff Dixon agrees with the Defense's argument the Defendant City of Philadelphia is exempt from state law liability for the claims listed herein via the Tort Claims Act. 42 Pa.C.S.A. § 8541. The Plaintiff hereby moves to withdraw any and all state law claims against Defendant City of Philadelphia

### H.  Plaintiff Dixon's Allegation Concerning Defendant Schweizer's Disciplinary Conduct Supports a Municipal Liability Claim

In Count 16 of Plaintiff Dixon's Amended Complaint, he asserts a claim against the City of Philadelphia pursuant to *Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978). In *Monell*, the United States Supreme Court established that a municipality cannot be held liable on a *respondeat superior* theory. Instead, liability can only be imposed against a municipality when there is evidence that a constitutional violation by a municipal actor resulted from a municipal policy, custom or practice. *See Monell*, 436 U.S. at 691–95. Put differently, courts adjudicating *Monell* claims "have recognized a two-path track to municipal liability under § 1983, depending on whether the allegation is based on municipal policy or custom." *Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (citations and quotations omitted). A policy occurs when a decisionmaker with final authority "issues an official proclamation, policy, or edict," while a custom occurs when practices are "so permanent and well-settled as to virtually constitute law." *See id*. (citations and quotations omitted); see also *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (superseded by statute on other grounds).

Further, municipal liability attaches only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. Before municipal liability

will be imposed, the plaintiff must prove that the municipality's alleged practices are "*so widespread as to have the force of law.*" *Bd. of Cty. Commrs. of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis added); *accord, Beck v. City of Pitt.*, 89 F.3d 966, 971 (3d Cir. 1996); *Andrews*, 895 F.2d at 1480. "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original). "[T]o be sure, 'official policy' often refers to formal rules or understandings – often but not always committed to writing – that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." Id. at 480-81.

In order to prevail on a *Monell* claim, the plaintiff must establish "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989). Significantly, this "link" must be so direct as to establish that the allegedly deficient policy or custom was the "*moving force*" behind the plaintiff's alleged injury. *Brown*, 520 U.S. at 407-08 (emphasis added); *see also Robinson v. City of Phila.*, No. 15-1574, 2015 WL 5965003, at *11 (E.D. Pa. Oct. 13, 2015).

Finally, beyond identifying an offending policy or custom and the way in which it led to a violation of a plaintiff's rights, a plaintiff must demonstrate that an official with the power to make policy (i.e. a municipal "policymaker") is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom. *See Andrews*, 895 F.2d at 1480. A *Monell* claim can only proceed if record evidence establishes that such policymaker was aware of similar unlawful conduct in the past but – with deliberate indifference – failed to take

precautions against future violations, the failure of which directly led to the plaintiff's injury. *See, e.g., Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990).

### 1. Plaintiff Established an Underlying Constitutional Violation

Plaintiff Dixon's *Monell* claim survives summary judgment for a number of reasons, the first being the fact that Plaintiff can prevail on all of his underlying claims against Defendants Schweizer, Pross, and Szelagowski. To maintain a claim for municipal liability, Plaintiff must first establish a constitutional violation by a municipal actor. *See, e.g., City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986); *Kneipp v. Tedder*, 95 F.3d 1199, 1212 n.26 (3d Cir. 1995) (§ 1983 claim cannot stand if the underlying constitutional claim is invalid); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1149 50 (3d Cir. 1995) (unless plaintiff establishes a constitutional injury, it is irrelevant for purposes of § 1983 liability whether the municipality's policies caused an injury), cert denied 516 U.S. 858 (1995).

Here, Plaintiff's claims against Schweizer, Pross, and Szelagowski succeed and this claim may move forward as a matter of law because the Defendants cannot demonstrate that probable cause existed to support Plaintiff's arrest and prosecution. Plaintiff's constitutional rights, particularly via the 4th and 14th amendment rights were violated by these Defendants and thereby the Monell claim was properly pled.

### 2. Plaintiff Has Shown a Municipal "Policy" or "Custom" Which Caused his Injuries

Plaintiff's claim against the City are sufficient to survive summary judgment because the *Monell* allegations are clearly established and supported by the record. The City of Philadelphia was deliberately indifferent to persons such as Plaintiff when they failed to previously terminate, reassign, or otherwise discipline Defendant Schweizer. The record clearly supports that on at least 3 different occasions since 1999 whereby Defendant Schweizer exhibited lying, racist

and/or other similar actions, which clearly was an abuse of his authority. In 2000 after Defendant Schweizer admitted to lying about witnessing a black male engaged in drug sales, he was not fired. In fact a few years later he was assigned to the narcotics strike force.

The narcotics strike force, a unit tasked with eradicating illicit drug sales, is the unit he was sent to after he admitted he improperly arrested Corey Porter, a young black male, because he lied about witnessing him selling drugs. When Defendant Schweizer is assigned to Narcotics Strike Force, he again gets suspended in 2008 for having 2 racists stickers in his police issued locker. When Commissioner Ramsey suspends Defendant Schweizer for having a sticker of Klansman with the phrase "Blue by Day, White by Night" and the other sticker with "White Power", this was the second time Defendant Schweizer had been disciplined for racist behavior.

This was also the third time in which he was disciplined for abusing his authority. The fact Defendant Schweizer was disciplined for abusing his authority, possessing racist stickers at work, and lying about witnessing a drug transaction without being terminated demonstrates the policy-makers at the Police Department made a deliberate decision. Further by being sent to police the 24th district an area rife with narcotics sales and a predominant minority population, the policy-makers, in particular Commissioner Ramsey, subjected persons similarly situated to Plaintiff, the behavior of Defendant Schweizer. Further, based on his history of behavior, the policy-makers still allowed him to lead narcotics surveillance operations and act as the observing officer. These actions show the Police Department failed to adequately train, supervise, and discipline, Defendant Schweizer and these failures directly and proximately led to Plaintiff Dixon's foreseeable injuries. Thereby, these counts should remain as the moving force behind Plaintiff Dixon's injury was the City's unwillingness to control Defendant Schweizer.

3.   **Plaintiff has Shown Evidence of Deliberate Indifference on the Part of Municipal Policymakers**

Another issue compelling the denial of the Defense's Monell claim is the record evidence that any City of Philadelphia policymaker was deliberately indifferent to a risk of harm to Plaintiff or similarly situated persons resulting from Schweizer's employment with PPD. As explained by the Third Circuit, "absent the conscious decision or deliberate indifference of some natural person, a municipality, as an abstract entity, cannot be deemed to have engaged in a constitutional violation by virtue of a policy, a custom, or a failure to train." *Simmons v. City of Phila.*, 947 F.2d 1042, 1063 (3d Cir. 1991) (superseded by statute on other grounds).

It thus follows to prevail on a § 1983 claim against a municipality, a plaintiff must identify an official with policy-making authority directly responsible for the policy or custom which violated the plaintiff's rights. *See, e.g., Jett v. Dallas Ind. School Dist.*, 491 U.S. 701, 737 (1989) (plaintiff must prove decision of final policymaker caused the deprivation of rights by policies or by acquiescence in a longstanding custom or practice that constitutes a standard operating procedure of the local governmental entity); *see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). Once a policymaker is so identified, "plaintiffs must 'present *scienter-like evidence of indifference* on the part of [such] policymaker." *Beswick v. City of Phila.*, 185 F. Supp. 2d 418, 427 (E.D. Pa. 2001). Liability can only attach if record evidence demonstrates that the policymaker has made a deliberate choice to follow a particular course of action from among various alternatives. See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

Here, such evidence exists. There is a pattern of deliberate indifference on the part of numerous chiefs of police who are official policy-makers for the City of Philadelphia. In 2000,

Commissioner John Timoney, made a deliberate determination to only suspend and not terminate a law enforcement agent under his command who admitted to arresting a black citizen he lied about seeing selling drugs and sitting next to a person who was as well. Defendant Schweizer in this incident was found to have abused his authority. Commissioner Timoney could have terminated Defendant Schweizer but decided to not. Next, in 2004, when Defendant Schweizer was accused of using rude/insulting language Police Commissioner Sylvester Johnson had a choice between terminating him or not. Commissioner Johnson, deliberately made the decision to suspend Defendant Schweizer and allow him to continue working as a police officer. Furthermore, in 2008, Commissioner Ramsey, had to make a decision about how to discipline Defendant Schweizer for having racist stickers inside his police locker. Commissioner Ramsey suspended him for 20 days and demoted him to the 24th district, which is in Kensington, a predominately minority area, highlighted by high-crime and rampant narcotics sales violations. Commissioner Ramsey made a deliberate choice to not terminate Defendant Schweizer but to allow him to continue working as a law enforcement agent, who would now be assigned to one of the busiest narcotics enforcement zones, where the large minority of the population and alleged drug sellers were of Latino and/or Black heritage.

It is apparent from the record provided, in particular the sealed exhibits H-J, since 1999 multiple policy-makers were aware of his conduct and his numerous abuses of authority and making false statements regarding black males selling drugs. These factors are exacerbated because Commissioner Ramsey decided not to terminate Defendant Schweizer even after finding stickers with a picture of a Klansman which stated "Blue by Day, White by Night" and another which read "White Power". It is hard to find a scenario in which the policy-makers in the

Philadelphia Police Department, starting in 1999, did not continually ignore Defendant

Schweizer's false police reports, racist, and abusive behavior.

**III.     Conclusion**

  For all the foregoing reasons, Plaintiff Dixon requests this Court deny the Defendants'

Motion for Summary Judgment and schedule this matter for a 12-person jury trial.


      Respectfully Submitted,
      CORNERSTONE LEGAL GROUP

      By: /s/ D. Wesley Cornish, Esquire
      D. Wesley Cornish, Esquire
      Pennsylvania Supreme Court # 310865
      230 South Broad Street, 17th Floor
      Philadelphia, PA 19102
      Tel: 212-444-2039
      **Attorney for Plaintiff**
      November 6, 2019

| | | |
|---|---|---|
| **Anthony Dixon,** | : | **United States District Court** |
| **PLAINTIFF,** | : | **Eastern District of Pennsylvania** |
| v. | : | |
| **Scott Schweizer, Erik Pross, et al.,** | : | **Civil Division** |
| **DEFENDANT.** | : | **2:18-cv-5403** |

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify I am on this day, serving the foregoing on the persons listed below via electronic

mail/delivery service, which satisfies the requirements of the Rules of Civil Procedure to:

**Andrew Pomager, Esquire**
City Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19107

Respectfully Submitted,
CORNERSTONE LEGAL GROUP

By: /s/ D. Wesley Cornish, Esquire
D. Wesley Cornish, Esquire
Pennsylvania Supreme Court # 310865
230 South Broad Street, 17th Floor
Philadelphia, PA 19102
Tel:    212-444-2039
**Attorney for Plaintiff**
November 6, 2019

| Anthony Dixon, | : | **United States District Court** |
|---|---|---|
| **PLAINTIFF,** | : | **Eastern District of Pennsylvania** |
| v. | : | |
| **Scott Schweizer, Erik Pross, et al.,** | : | **Civil Division** |
| **DEFENDANT.** | : | **2:18-cv-5403** |

## <u>PLAINTIFF ANTHONY DIXON'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

Plaintiff, Anthony Dixon, respond to the Defendants' Statement of Undisputed Material Facts, and additionally supplement more issues which are uncontested.

1. Agreed

2. Agreed

3. Agreed

4. Agreed

5. Agreed

6. Agree

7. Agree in part, disagree in part. When Navarro was arrested Plaintiff Dixon along with his wife were standing next to him and had been engaged in a conversation with him for a few short minutes preceding the takedown. Dixon Deposition pgs. 97-98.

8. Agree in part, disagree in part. The Defense claims around the time Dixon first saw police, he saw other neighborhood regulars that he would greet. Plaintiff Dixon testified in response to the question "other than your wife and Luis Navarro, was there anybody else that you recognized in the area" to which he answered, "No. it was like there was quite a few people out. And I knew some people when you pass them, saying hello and so forth. It was pretty much a regular type of, I mean, day. Dixon Deposition pgs. 34-35.

9. Disagree. This claim is in dispute. Defendant Schweizer claims the Plaintiff said this statement, while the Plaintiff denies saying this. Further, based on Defendant Schweizer's testimony, this was a strong indication of probable cause, Plaintiff Dixon was engaged in a narcotics seller conspiracy. To materially differ on this observation alone, should be enough to overcome summary judgment, in light of Defendant Schweizer not observing any packages exchange hands. Schweizer Deposition p. 34 ("They were calling out the words: dope, rock, and powder") *compare with* Dixon Deposition p. 97 (never heard Navarro say dope, rock, powder), see Amend Comp. p. 2 (At no time did Plaintiff yell out "dope, rock, powder" to any person and nor did he hear any other person saying that phrase).

10. Agree, to the limited degree the police paperwork provided and testimony indicates this fact, but Plaintiff Dixon is without direct knowledge about this event nor did he observe it and thereby can only agree to the extent this evidence was proffered by the Defense.

11. Disagree. Plaintiff Dixon disputes this statement by Defendants. Defendant Schweizer claims he observed Plaintiff Dixon, hand Waskovich, Torres, and Ortiz objects after Navarro accepted money from them. Schweizer Deposition pgs. 48, 49, 53, 54, 70. Plaintiff Dixon testified, contrary to Defendant Schweizer, he never spoke with, accepted money, exchanged any items/objects with any person, nor physically touched Anthony Waskovich, Keith Torres, Robert Ortiz, and Alyssa Wegner and he did not see Navarro exchange money or objects with these persons. Plaintiff Dixon further testified he did not have any narcotics in a green box. Dixon Deposition pgs. 98-99.

12. Disagree. Officer Schweizer also observed Waskovich, Cruz, and Wegner each separately approach Dixon and Navarro, hand Navarro money, and receive a bag Navarro retrieved from the lot. Schweizer Deposition p. 54. Plaintiff Dixon disputes this statement as he denies in his testimony, Defendant Schweizer's accusations. Plaintiff Dixon specifically never had any conversation, nor was he approached by either Anthony Waskovich, Keith Torres, Robert Ortiz, and Alyssa Wegner. Plaintiff Dixon also denies seeing and/or being physically near if he did Luis Navarro accept money from either Anthony Waskovich, Keith Torres, Robert Ortiz, and Alyssa Wegner. Dixon Deposition pgs. 98-99.

13. Agree, to the to the limited degree the police paperwork provided and testimony indicates this fact, but Plaintiff Dixon is without direct knowledge about this event nor did he observe it and thereby can only agree to the extent this evidence was proffered by the Defense

14. Agreed, as much was stated in the police paperwork provided by the Defense yet Plaintiff Dixon is without direct knowledge of this fact as this is fact is outside of his direct observation and purview.

15. Agreed

16. Agreed

17. Agreed

18. Agreed

19. Disagree. Defendant Pross testified he saw the Plaintiff standing at or near the location almost immediately before he was allegedly observed selling narcotics. Further,

Defendant Pross observed the narcotics recovered and NIK tested these materials. Pross Deposition pgs. 13, 20.

20. Agree

**<u>Plaintiff's Response to Defense's Sealed Supplemental Statement of Material Facts</u>**

[redacted]



**<u>Plaintiff's Supplemental Statement of Undisputed Material Facts</u>**

28. All criminal charges arising from this incident against Plaintiff Anthony Dixon were dismissed.

29. Plaintiff Dixon was never seen entering the lot where Navarro went. Schweizer Deposition p. 76.

30. Defendant Schweizer never heard any conversation between any of the alleged buyers, and between any other person. Schweizer Deposition p. 37.

31. It was nighttime when all observations were made. Schweizer Deposition p. 81.

32. Defendant Schweizer was never able to tell the amount, nor the denominations, of any money for any alleged transaction. Schweizer Deposition p. 74.

33. Defendant Schweizer never left the vehicle after parking it, until the investigation ended. Schweizer Deposition p. 79.

34. Defendants Pross and Schweizer were dressed in plainclothes. Schweizer Deposition p. 12.

35. Defendant Pross was in constant radio contact with all officers involved in this investigation and was able to hear all their communications and Defendant Schweizer's communications back. Pross Deposition p. 16.

36. No recordings exist of these alleged narcotics transactions. Schweizer Deposition pgs.78-79.

37. Defendant Schweizer never saw an narcotics or actual object(s) which resembled narcotics, but saw hand motions which he believed indicated narcotics sales. Schweizer Deposition p.77.

38. Defendant Schweizer was not using any visual aids to help make observations. Schweizer Deposition p. 51.

39. Defendant Szelagowski admits he physically stopped and arrested Plaintiff Dixon. Szelagowski Deposition page 21-22.

40. Plaintiff Dixon was not attempting to or resisting arrest nor fleeing/eluding Defendant Szelagowski at any time. Szelagoswki Deposition pgs. 21-22.

41. Defendant Pross NIK tested all the alleged narcotics recovered in this investigation. Pross Deposition p. 20.



[redacted]

Respectfully Submitted,
CORNERSTONE LEGAL GROUP

By: /s/ D. Wesley Cornish, Esquire
D. Wesley Cornish, Esquire
Pennsylvania Supreme Court # 310865
230 South Broad Street, 17th Floor
Philadelphia, PA 19102
Tel: 212-444-2039
**Attorney for Plaintiff**
November 6, 2019

| Anthony Dixon, | : | **United States District Court** |
| **PLAINTIFF,** | : | **Eastern District of Pennsylvania** |
| v. | : | |
| Scott Schweizer, Erik Pross, et al., | : | **Civil Division** |
| **DEFENDANT.** | : | **2:18-cv-5403** |

## **CERTIFICATE OF SERVICE**

I hereby certify that I am on this day, serving the foregoing upon the persons indicated below via

electronic mail/delivery service, which satisfies the requirements of the Federal Rules of Civil

Procedure to:

<div align="center">

**Andrew Pomager, Esquire**
City Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19107

</div>

## **VERIFICATION**

The facts set forth in the foregoing are true and correct to the best of the undersigned's

knowledge, information and belief and are verified subject to the penalties for unsworn

falsification to authorities and perjury.

Respectfully Submitted,
CORNERSTONE LEGAL GROUP

By: /s/ D. Wesley Cornish, Esquire
D. Wesley Cornish, Esquire
Pennsylvania Supreme Court # 310865
230 South Broad Street, 17th Floor
Philadelphia, PA 19102
Tel:    212-444-2039
**Attorney for Plaintiff**
November 6, 2019