IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY DIXON, <br>           **Plaintiff,** | CIVIL ACTION |
|    v. | |
| OFFICER SCOTT SCHWEIZER, <br> OFFICER ERIK PROSS, <br> OFFICER SZELAGOWSKI, <br> CITY OF PHILADELPHIA, <br> JOHN/JANE DOES 1-10 <br>           **Defendants.** | NO. 18-5403 |

**DuBois, J.**                                                    **August 11, 2020**

**M E M O R A N D U M**

## I.   INTRODUCTION

This case arises out of the arrest of plaintiff, Anthony Dixon, as part of a narcotics

investigation conducted by defendant officers Scott Schweizer, Erik Pross, and Michael

Szelagowski on January 19, 2018.  Plaintiff asserts claims for violations of the Fourth, Fifth,

Sixth, Eighth, and Fourteenth Amendments under 42 U.S.C. § 1983 and violations of

Pennsylvania law.  Plaintiff also asserts a municipal liability claim under 42 U.S.C. § 1983

against the City of Philadelphia ("the City").  Presently before the Court is defendants' Motion

for Summary Judgment.  For the reasons that follow, the Motion is granted in part and denied in

part.

## II.   BACKGROUND[1]

### A.  Investigation and Arrest of Plaintiff

On January 19, 2018, as part of a narcotics investigation, defendant officers Scott

---

[1] The facts are presented in the light most favorable to plaintiffs.  Disputed facts are noted as such. Where appropriate, plaintiff and the defendants' statements of material facts are cited in lieu of a direct citation to the record.

Schweizer and Erik Pross set up surveillance on the 3000 block of Ella Street, Philadelphia, in an unmarked vehicle. Defs.' Statement Material Facts ("Defs.' SMF") ¶ 1. As part of this investigation, defendant officer Michael Szelagowski acted as one of several backup officers. *Id.* ¶ 2. The neighborhood in which the investigation was conducted is a high-crime area, in which open-air drug sales often take place. *Id.* ¶ 3.

Officers reported observing plaintiff, Anthony Dixon, standing on the East side of the 3000 block of Ella Street with another individual who was later identified as Luis Navarro. Defs.' Mot. Summ. J. ("Defs.' Mot.") Ex. D 1. It is undisputed that plaintiff was standing a foot and a half away from Navarro and having a conversation with him. Defs.' SMF ¶¶ 6, 7. Schweizer testified that he heard plaintiff and Navarro calling out "dope," "rock," and "powder," which refer to heroin, crack cocaine, and powder cocaine. *Id.* ¶ 9. Plaintiff disputes this testimony, and testified that he never heard Navarro call out those words. Pl.'s Resp. Defs.' SMF. ¶ 9; Dixon Dep. 97:4-8.

Schweizer observed three individuals—Anthony Waskovich, Keith Torres, and Robert Ortiz—each separately approach Navarro, hand Navarro money, and receive an item from plaintiff that plaintiff retrieved from a green box in his left jacket pocket. Defs.' Mot. Ex. D 1; Schweizer Dep. 48:9-49:11, 54:2-12, 70:8-17. Schweizer testified that Waskovich also received a bag from Navarro that Navarro retrieved from a nearby lot. Schweizer Dep. 54:9-12. Schweizer observed two other individuals—Angel Cruz and Alyssa Wegner—approach Navarro, hand Navarro money, and receive a bag that Navarro had retrieved from the lot. Defs.' Mot. Ex. D 1-2.[2] In total, Schweizer observed Navarro enter and return from the lot three times. Defs.'

---

[2] Defendants assert in their Statement Material Facts that Schweizer also observed Wegner receive an item from plaintiff. Defs.' SMF ¶ 11. However, neither Schweizer's testimony nor the Investigation Report support that contention.

SMF ¶ 10.  Waskovich, Torres, Ortiz, Cruz, and Wegner were each stopped by backup officers who recovered narcotics from them.  Defs.' SMF. ¶ 13.  Powder and crack cocaine were later recovered from the lot.  *Id.* ¶ 14.

Plaintiff again disputes Schweizer's version of events.  Plaintiff testified that he did not see Navarro accept money from or hand any objects to any individual while standing next to him.  Dixon Dep. 98:8-19.  According to plaintiff, he did not receive any money from or hand any objects to any individual.  *Id.* at 98:23-99:4.

After observing the alleged transactions, Schweizer called backup officers to the area to stop Dixon and Navarro.  Defs.' Mot. Ex. D 2.  Szelagowski testified that he and his partner stopped Dixon and Navarro.  Szelagowski Dep. 21:19-22:6.  He stated that he handcuffed plaintiff and recovered a green "Newport box from his left jacket pocket," in which narcotics were found.  *Id.* at 22:3-8.  The Investigation Report states that the box contained 14 "clear zip lock packets" each containing a blue glassine packet containing a "white powder substance" and twenty-seven plastic containers containing a "white chunky substance."  Defs.' Mot. Ex. D 2.  Plaintiff disputes Szelagowski's testimony, and testified that he had no drugs on his person. Dixon Dep. 61:18-20.

Plaintiff also testified that, while attempting to comply with an officer's order to get on the ground, he was tackled.  Dixon Dep. 36:3-18.  Plaintiff could not identify by name the officer who allegedly tackled him, but described him as the "taller officer" and stated that he was the same officer who handcuffed him.  *Id.* at 36:8-12, 42:6-11.  Szelagowski disputes plaintiff's version of events and testified that he did not see any officer tackle plaintiff.  Szelagowski Dep. 23:17-24:24.

Pross testified that, while in the unmarked vehicle with Schweizer, he acted as a lookout

but did not observe any of the alleged narcotics sales.  Pross Dep. 14:20-15:10.  Additionally, he

conducted the field testing of the narcotics recovered in the investigation.  *Id.* at 20:8-19.

On March 12, 2018, Navarro pled guilty to the charges of possession with intent to

deliver a controlled substance stemming from his arrest on January 19, 2018.  Defs.' SMF. ¶ 20.

All criminal charges against plaintiff were dismissed on November 2, 2018.  Dixon Dep. 74:12-

75:5.[3]

### B.  Defendant Officer Schweizer's Disciplinary History

Schweizer was hired as an officer by the Philadelphia Police Department ("PPD") on

June 23, 1997.  Defs.' Suppl. Statement Material Facts ("Defs.' SSMF") ¶ 21.  Schweizer was

found to have violated PPD policy on the following occasions:

- In August of 1999, Schweizer and another officer were accused by an individual named

  Corey Porter of numerous violations—including physical abuse, verbal abuse, and abuse

  of authority—stemming from a July 30, 1999 investigation.  *Id.* ¶ 27(a).  The Internal

  Affairs Bureau ("IAB") found that Schweizer had not engaged in physical or verbal

  abuse, but had engaged in abuse of authority by making a false statement.[4]  *Id.*

  Schweizer received a five-day suspension.  *Id.*

- In May of 2004, Schweizer was accused by an individual named Louise Erb-O'Neill of

---

[3] In the Amended Complaint, plaintiff alleges that he was charged with possession with intent to distribute a controlled substance, intentional possession of a controlled substance by a person not regulated, and conspiracy, and that the criminal matter was terminated by a *nolle prosequi* order on November 2, 2018.  Am. Compl. ¶¶ 20, 23. The docket in plaintiff's state criminal case was not made part of the record.

[4] Plaintiff contends that this incident involved Schweizer falsely reporting that he observed "Corey Porter sell drugs and that he was also sitting next to a person who was seen selling drugs."  Pl.'s Resp. Defs.' SSMF ¶¶ 23-24. Plaintiff argues that the arrest was based on "false evidence" and "without probable cause."  *Id.*  However, no record evidence supports this description of the incident.  Rather, it appears that plaintiff is relying on allegations in his Amended Complaint in which plaintiff purports to quote from a memorandum dated June 1, 2000, from Internal Affairs Division Inspector, Mitchell Yanak.  Am. Compl. ¶ 34.  This Internal Affairs memorandum is not part of the record.  It is well-settled that the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but instead "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001).  Accordingly, the Court does not consider the Internal Affairs memorandum in ruling on the Motion.

physical and verbal abuse during an incident involving her son on April 29, 2004. *Id.*

¶ 27(b).  The only sustained allegation was that Schweizer used "Rude/Insulting

Language." *Id.*  Schweizer received a one-day unpaid suspension. *Id.*

- In January of 2008, while Schweizer was a member of the Narcotics Strike Force, the
  PPD Narcotics Division investigated a report that two racist stickers had been seen inside
  Schweizer's locker. *Id.* ¶ 27(c).  One sticker was a graphic of a Ku Klux Klansman
  surrounded by the words "Blue by Day, White by Night" and the other stated "White
  Power." Defs.' Mot. Ex. I 11.  Schweizer admitted to placing the stickers inside his
  locker but claimed he only did so after finding them attached to the outside of his locker.
  Defs.' SSMF *Id.* ¶ 27(c).  The investigation confirmed Schweizer's version of events. *Id.*
  Schweizer was suspended without pay for 20 days and transferred from the Narcotics
  Strike Force to the 24th Police District. *Id.*

- On October 25, 2011, Schweizer and defendant officer Pross discharged their firearms
  multiple times at a criminal suspect who pointed a loaded weapon at them. *Id.* ¶ 27(d).
  Prior to discharging their weapons, Schweizer and Pross were investigating a radio call
  for shots fired in the area and had discovered a firearm in a trash can but did not recover
  the firearm before conducting surveillance. *Id.*  The IAB determined that the discharge
  was justified and appropriate but that the officers had likely violated a PPD directive by
  conducting surveillance without first recovering the firearm in the trash can. *Id.*
  Accordingly, Schweizer received training and counseling. *Id.*

**C.  Procedural Background**

Plaintiff filed the Complaint in this matter on December 13, 2018.  On March 6, 2019,

defendants filed a Motion for Judgment on the Pleadings (Document No. 6).  In response,

plaintiff filed a Motion for Leave to File Amended Complaint (Document No. 10), which was granted by the Court on May 20, 2019.

In the Amended Complaint, plaintiff names as defendants Scott Schweizer, Erik Pross, Michael Szelagowski, and the City of Philadelphia.  Am. Compl. ¶¶ 6-9.  Plaintiff asserts claims of malicious prosecution under 42 U.S.C. § 1983 and state law against all defendants (Counts 1 & 2); false arrest under § 1983 and state law against all defendants (Counts 3 & 4); excessive force under § 1983 against Szelagowski and Pross (Count 5); battery under state law against Szelagowski and Pross (Count 6); assault under § 1983 and state law against Szelagowski and Pross (Counts 7 & 8); false imprisonment under § 1983 and state law against all defendants (Counts 9 & 10); unjustified search and seizure under § 1983 against all defendants (Count 11); conspiracy under § 1983 and state law against all defendants (Counts 12 & 13); failure to intervene under § 1983 and state law against all defendants (Counts 14 & 15); and municipal liability under § 1983 against the City (Count 16).  Am. Compl. ¶¶ 68-145.[5]

Defendants filed a Motion for Summary Judgment (Document No. 27) on September 27, 2019.  Plaintiff responded on November 6, 2019 (Document No. 33).  Defendants filed a Reply on November 20, 2019 (Document No. 37).  The Motion is thus ripe for decision.

## III.   LEGAL STANDARD

The Court will grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is material when it "might affect the outcome of the suit under the governing law."  *Anderson v.*

---

[5] In responding to defendants' Motion for Summary Judgment, plaintiff acknowledges that the Pennsylvania Tort Claims Act immunizes Pennsylvania municipalities from intentional tort claims and "moves to withdraw any and all state law claims against Defendant City of Philadelphia."  Pl.'s Resp. 11.  Accordingly, all state law claims asserted against the City (Counts 2, 4, 10, 13, & 15) are marked withdrawn with prejudice.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether . . . there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.* at 249.  However, the existence of a "mere scintilla" of evidence in support of the nonmoving party is insufficient. *Id.*  In making this determination, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment[] and resolve all reasonable inferences in that party's favor."  *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  The party opposing summary judgment must, however, identify evidence that supports each element on which it has the burden of proof.  *Celotex Corp.*, 477 U.S. at 322.

## IV.    DISCUSSION

Defendants move for summary judgment on all of plaintiff's claims.  Defendants argue: (1) there is no evidentiary basis to hold any defendants liable for plaintiff's claims of excessive force, assault, and battery (Counts 5-8); (2) probable cause existed for plaintiff's arrest and thus defeats his claims of false arrest, false imprisonment, malicious prosecution, and unjustified search and seizure (Counts 1-4, 9-11); (3) plaintiff's false imprisonment claims (Counts 9-10) are duplicative of his false arrest claims (Counts 3-4); (4) there is no evidence to support plaintiff's failure to intervene claims (Counts 14-15); (5) there is no evidence to support plaintiff's conspiracy claims (Counts 12-13); (6) plaintiff's evidence of disciplinary investigations into defendant officer Schweizer are insufficient to support his *Monell* claim (Count 16); (7) plaintiff has adduced no evidence that defendant officer Pross was personally involved in any of the alleged constitutional violations.  The Court addresses each argument in turn.

7

**A.  Excessive Force, Assault, and Battery (Counts 5-8)**

In his Amended Complaint, plaintiff asserts claims of excessive force, assault, and battery against Szelagowski and Pross (Counts 5-8).  Defendants move for summary judgment on these claims on the ground that plaintiff failed to identify the officer who allegedly tackled him.  Def.'s Mot. 3-4.  Defendants contend that plaintiff only produced evidence that "a tall officer, among approximately 12 officers present, tackled him."  *Id.* at 4.  In making that argument, they emphasize that plaintiff testified he had encountered Szelagowski previously, but nonetheless could not identify him as the individual who tackled him.  Defs.' Reply 2.  Plaintiff responds that the record evidence supports an inference that Szelagowski was the individual who "made physical contact" with plaintiff.  Pl.'s Resp. 5.  The Court agrees with plaintiff on this issue.

Courts have held that, where a plaintiff fails to identify which defendant is responsible for alleged excessive force, there is no evidentiary basis on which to hold any defendant liable.  *See, e.g.*, *Sharrar v. Felsing*, 128 F.3d 810, 821 (3d Cir. 1997) ("[The plaintiff], who could recognize all of the defendant officers, was unable to identify which police officers were in the police car with him at the time of the alleged abuse.  There was therefore no evidentiary basis on which to hold these defendants liable"); *Taylor v. Brockenbrough*, No. 98-6419, 2001 WL 1632146, at *2 (E.D. Pa. Dec. 20, 2001) ("In his deposition, [the plaintiff] testified that although there were two officers at the scene of the incident, only one of the two officers searched and abused him . . . [the plaintiff] has not provided any evidence from which a reasonable jury could determine [which defendant] was responsible for unlawfully beating [him]").  However, courts have refused to grant summary judgment where, notwithstanding the plaintiff's inability to identify the officer who used force, the evidence identifies the officer who "bore primary

responsibility for taking [the plaintiff] into custody" and could have used excessive force in so doing. *Dull v. West Manchester Tp. Police Dept.*, 604 F. Supp. 2d 739, 750 (M.D. Pa. 2009).

In this case, drawing all inferences in favor of the non-moving party, plaintiff has provided evidence from which a reasonable jury could determine that Szelagowski tackled plaintiff. While Szelagowski disputes that plaintiff was tackled, he also stated in his deposition that he was involved in the "takedown" of plaintiff and, specifically, that he handcuffed him. Szelagowski Dep. 21:19-22:8. Considered in light of plaintiff's testimony that the officer who tackled him was also the individual who handcuffed him, Dixon Dep. 36:8-12, 42:6-11, there is a genuine issue of material fact as to whether Szelagowski was involved in the claimed excessive use of force, assault, and battery. *See Dull*, 604 F. Supp. 2d at 750. The Court thus denies defendants' Motion with respect to Counts Five through Eight to the extent they are brought against Szelagowski.

The Court concludes, however, that the record evidence does not support plaintiff's excessive force, assault, and battery claims against Pross. As Pross testified that he never left the vehicle until after plaintiff was arrested, and there is no contrary evidence, there is no evidence from which a reasonable jury could determine that he was involved in the alleged excessive force, assault, or battery. Pross Dep. at 17:8-15; *see, e.g.*, *Torres v. Allentown Police Dept.*, No. 13-3066, 2016 WL 5404476, at *7 (E.D. Pa. Sept. 27, 2016) ("Evidence showing an officer's presence at the scene where officers assaulted the plaintiff was insufficient to support a finding that the particular officer assaulted the plaintiff."). Accordingly, the Court grants defendants' Motion with respect to Counts Five through Eight against Pross.

### B. False Arrest, False Imprisonment, Malicious prosecution, and Unjustified Search and Seizure (Counts 1-4, 9-11)

Defendants contend that probable cause for plaintiff's arrest defeats plaintiff's false

arrest, false imprisonment, malicious prosecution, and unjustified search and seizure claims.

Defs.' Mot. 5, 8. Defendants argue that there was probable cause to initiate narcotics charges

against plaintiff based on the following facts:

- Plaintiff was "in a high crime area with a lot of open-air drug sales" and plaintiff
  "concedes drugs were probably being sold on the day of his arrest." *Id.* at 6.

- At the time of his arrest, plaintiff was a foot and a half away from Navarro, who later
  pled guilty to the charge of possession with intent to deliver a controlled substance. *Id.* at
  6-7.

- Schweizer heard plaintiff and Navarro calling out "dope," rock," and "powder." *Id.* at 6.

- Schweizer observed narcotics transactions involving buyers Waskovich, Torres, Cruz,
  Ortiz, and Wegner, from whom narcotics were recovered. *Id.* at 6. Schweizer
  specifically observed plaintiff hand Waskovich, Ortiz, and Torres objects after they
  handed Navarro money. Schweizer Dep. 54:2-21, 70:12-17; Defs.' Mot. Ex. D.

- Schweizer observed Navarro walk to a lot and then hand Waskovich, Cruz, and Wegner
  objects he retrieved from the lot. Powder and crack cocaine were later recovered from
  the lot. Defs.' Mot. 6.

- Szelagowski recovered narcotics from plaintiff. *Id.*

In response, plaintiff argues that genuine disputes of material fact preclude a

determination of probable cause by the Court at this stage. Pl.'s Resp. 6. In his deposition

testimony, plaintiff contested most of the facts which defendants argue support probable cause.

Plaintiff testified that he never heard Navarro advertise "dope, rock, and powder," and that he

never he never saw Navarro accept money from any person or hand any objects to any

individual. Dixon Dep. 97:2-98:22. According to plaintiff, he did not hand any objects to

anyone, or accept money in return. *Id.* 98:23-99:10. Plaintiff also disputes that narcotics were recovered from him and states that he did not possess any narcotics. *Id.* at 61:15-20. Defendants argue that, even if it can be disputed that Schweizer observed plaintiff participate in the transactions or that narcotics were recovered from him, "the fact that [plaintiff] was in a high crime area where drugs were probably being sold, a foot and a half away from Navarro, who indisputably—in light of his guilty plea—was engaging in drug transactions at the time of the investigation, was sufficient to meet the low bar the officers needed for probable cause." Defs.' Mot. 7. The Court agrees with plaintiff that the record evidence presents a genuine issue of material fact with regard to probable cause sufficient to defeat defendants' Motion.

To establish claims of false arrest, false imprisonment, or malicious prosecution under the Fourth Amendment, a plaintiff must show the absence of probable cause. *See Spiker v. Whittaker*, 553 F. App'x 275, 278 (3d Cir. 2014). The same is true for the equivalent claims under Pennsylvania law. *See Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. 2010); *see also Lozada v. Wilmington Dept. of Police*, No. 07-663, 2008 WL 1994870, at *7 (E.D. Pa. May 5, 2008) ("The . . . standards governing the probable cause analysis under the Fourth Amendment are equally applicable to Plaintiff's state law claims") (citing *Colbert v. Angstadt*, 169 F. Supp. 2d 352, 359 n.10 (E.D. Pa. 2001)). Additionally, plaintiff's unjustified search and seizure claim under § 1983 is predicated on a lack of probable cause for plaintiff's arrest. Pl.'s Resp. 9. "Because of its fact-specific nature, the existence or absence of probable cause is ordinarily a question of fact appropriate for resolution by a jury." *Adams v. Springmeyer*, 17 F. Supp. 3d 478, 495 (W.D. Pa. 2014). Nonetheless, "a district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to the Plaintiff, reasonably

would not support a contrary factual finding, and may enter summary judgment accordingly."
*Brantley v. Burrows*, No. 14-4185, 2015 WL 13620413, at *3 (E.D. Pa. Nov. 19, 2015).

According to defendants' version of events, there are several facts that support a finding
of probable cause. First, the "'surreptitious passing of a small package' in exchange for cash" is
a fact that militates in favor of probable cause. *U.S. v. Nole*, No. 06-0066, 2006 WL 2085989, at
*4 (E.D. Pa. July 25, 2006) (quoting *United States v. Persaud*, No. 02-113, 2003 WL 21639454,
at *3 (D. Del. July 3, 2003)). Additionally, where the police witness an exchange between
suspects and recover drugs from one suspect, there is probable cause to arrest the other. *See
Smith v. City of N.Y.*, No. 04-3286, 2010 WL 3397683, at *8 (S.D.N.Y. Aug. 27, 2010). Finally,
"[w]hen coupled with other suspicious circumstances, the geographical area in which an event
occurs can help support a finding of probable cause." *See Persaud*, 2003 WL 21639454, at *4.
However, the material facts supporting probable cause on those bases are in dispute.
Significantly, plaintiff denies that he handed any objects to any individual in exchange for
money or that he saw Navarro do the same. Dixon Dep. 97:2-98:22, 98:23-99:10. Plaintiff
further disputes that narcotics were recovered from him. *Id.* at 61:15-20. "In considering a
motion for summary judgment, a district court may not make credibility determinations or
engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be
believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating
Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
255 (1986)); *see also Williams v. Temple Univ.*, No. 04-831, 2011 WL 2516234, at *6 (E.D. Pa.
June 21, 2011) (refusing to grant summary judgment on false arrest claims where defendant
officers "simply petition the Court to believe their story and reject Plaintiff's story").

After setting aside those facts supporting probable cause as to which there is a genuine

dispute, the Court is left with the following: plaintiff was in a high crime area and he was

standing next to an individual who later pled guilty to the charge of possession with intent to

deliver.  Critically, "probable cause cannot stem only from a suspect's presence in a high-crime

area."  *Huff v. Reichert*, 744 F.3d 999, 1007-1008 (7th Cir. 2014).  While location is relevant to

the probable cause calculus, that "consideration alone does not even support reasonable

articulable suspicion."  *Id.*; *see also U.S. v. Bonner*, 363 F.3d 213, 217 (3d Cir. 2004) ("Mere

presence in an area known for high crime does not give rise to reasonable suspicion for a stop.").

Moreover, "An individual's mere proximity  to another person whom police suspect of criminal

conduct is insufficient to establish probable cause."  *Dull*, 604 F. Supp. 2d at 751 (quoting

*Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)).  Courts have maintained that there is no probable

cause "even when a person is arrested at a location known for drug sales, and when others in

near proximity are found to be in possession of drugs."  *Burgess v. City of New York*, No. 15-

5525, 2018 WL 1581971, at *3 (E.D.N.Y. Mar. 29, 2018).

In this case, although Navarro's guilty plea establishes probable cause for his arrest and

prosecution, *see Walker v. Clearfield Cnty. Dist. Attorney*, 413 F. App'x 481, 483 (3d Cir. 2011)

(holding that "a guilty plea . . . does not permit a later assertion of no probable cause."), it does

not necessarily establish probable cause for plaintiff's arrest and prosecution.  Probable cause

created by one individual may "taint" another individual who "appears to be partnered or

associated with the first," *United States v. Nichols*, No. 15-85-01, 2015 WL 13344676, at *6

(E.D. Pa. Oct. 8, 2015), but "more than a momentary, random, or apparently innocent association

between the defendant and the known criminal activity" is required, *U.S. v. Martinez-Molina*, 64

F.3d 719, 727 (1st Cir. 1995).  Courts consider "whether the known criminal activity was

13

contemporaneous with the association" and "whether the nature of the criminal activity is such that it could not normally be carried on without the knowledge of all persons present." *Nichols*, 2015 WL 13344676 at *6 (quoting *United States v. Hillison*, 733 F.2d 692, 697 (9th Cir. 1984)). For example, in *United States v. Hillison*, the Ninth Circuit applied those factors to find probable cause to arrest a suspect based on his "prolonged close contact" with suspected drug dealers "over two days." *Hillison*, 733 F.2d at 697.

Based on all of the foregoing, the Court concludes that a genuine dispute of material fact remains with regard to probable cause for plaintiff's arrest. Plaintiff was observed in close proximity to Navarro for approximately 35 minutes—far from the "prolonged close contact" that courts have recognized as sufficient to find probable cause based only on proximity to another suspect in similar cases. *Hillison*, 733 F.2d at 697; Defs.' Mot. Ex. D. Moreover, plaintiff disputes observing or participating in any narcotics transactions during that time. Dixon Dep. 97:2-99:10. Accordingly, on the current state of the record, the Court declines to find that the probable cause created by Navarro tainted plaintiff. The Court thus denies defendants' Motion to the extent it argues that evidence of probable cause defeats plaintiff's claims of false arrest, false imprisonment, malicious prosecution, and unjustified search and seizure.

### C. Duplicative Claims for False Imprisonment and False Arrest (Counts 3-4, 9-10)

Defendants argue that plaintiff's false imprisonment claims should be dismissed because they are duplicative of the false arrest claims. Defs.' Mot. 7 n.2. The Court agrees with defendants only as to plaintiff's state law claim for false arrest.

"Under Pennsylvania law, false arrest and false imprisonment are 'essentially the same actions.'" *Watson v. Witmer*, 183 F. Supp. 3d 607, 617 (M.D. Pa. 2016) (quoting *Pellegrino v. U.S. Transp. Sec. Admin.*, 855 F. Supp. 2d 343, 357 (E.D. Pa. 2012)). As such, courts have

14

determined that "a 'false arrest' is an alternative means of establishing liability for false imprisonment but 'is not itself a tort in the sense of being an independent source of liability.'" *Dull*, 604 F. Supp. 2d at 755 (quoting *Cerami v. Blake*, No. 92-4358, 1993 WL 21011, at *6 (E.D. Pa. Jan. 20, 1993)); *see also Osgood v. Borough of Shamokin Dam*, 278 Pa. Super. 423, 425 (Pa. Super. Ct. 1980) (explaining that "false arrest" is "synonymous with false imprisonment where a defendant purports to act for the purpose of securing the administration of the law without actual legal justification").

However, the Court denies defendants' Motion with respect to plaintiff's claims for false arrest and false imprisonment under § 1983. While courts recognize that false arrest and false imprisonment claims under the Fourth Amendment are "nearly identical claims" and often analyzed together, *Wilson v. Dewees*, 977 F. Supp. 2d 449, 455 (E.D. Pa. 2013), they remain distinct causes of action, *see, e.g.*, *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634-36 (3d Cir. 1995) (describing the distinct elements of false arrest and false imprisonment claims under § 1983).

Accordingly, the Court grants defendants' Motion with respect to plaintiff's state law false arrest claim (Count 4) because it does not constitute an independent tort under Pennsylvania law, and denies defendants' Motion with respect to plaintiff's false arrest claim under § 1983 (Count 3).

### D.  Failure to Intervene (Counts 14 & 15)

In the Amended Complaint, plaintiff alleges that the defendant officers had a "duty to protect citizens from police assaulting [them]" and failed to intervene to stop officers from "restraining, assaulting, battering, seizing, and searching" plaintiff.  Am. Compl. ¶¶ 120-121, 123.  Defendants contend that plaintiff has adduced no evidence to support his "failure to

intervene" claims.  Defs.' Mot. 7-8.  Defendants argue that, while plaintiff testified that an officer tackled him as he was preparing to comply with the officer's orders, there is "no evidence that the named Defendants were on hand to prevent the tackling at the time it occurred."  *Id.* at 8. In response, plaintiff argues that defendants Schweizer and Pross are liable for failure to intervene in Szelagowski's alleged use of excessive force.  Pl.'s Resp. 9.  The Court agrees with defendants on this issue.

"A police officer is directly liable under § 1983 if he fails to intervene when a constitutional deprivation takes place in his presence."  *Sullivan v. Warminster Tp.*, 765 F. Supp. 2d 687, 701 (E.D. Pa. 2011) (citing *Stewart v. Moll*, 717 F. Supp. 2d 454, 462 (E.D. Pa. 2010)). However, "an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002).  Courts have typically held that "the constitutional violation must have occurred in the officer's presence."  *Ewing v. Cumberland Cty.*, 152 F. Supp. 3d 269, 309 (D.N.J. 2015).  Moreover, where evidence shows that an alleged excessive use of force was "instantaneous" or "impulsive," courts have found no realistic or reasonable opportunity to intervene.  *Id.*

Plaintiff contends that, though Schweizer and Pross were in an unmarked car 25 feet away from him, Schweizer Dep. 38:14-21; Pross Dep. 17:8-19, they were in "constant radio communication" and "had ample time to stop Defendant Szelagowski from approaching Plaintiff and tackling him,"  Pl.'s Resp. 9.  However, plaintiff fails to cite any evidence that either Schweizer or Pross had a realistic or reasonable opportunity to intervene.  Considering both the distance between Schweizer, Pross, and plaintiff and the fact that plaintiff described the tackle as unexpected and instantaneous, there is no evidence that either Schweizer or Pross had an opportunity to intervene.  Dixon Dep. 36:8-18; *see Ewing*, 152 F. Supp. 3d at 309-10.

Accordingly, the Court grants defendants' Motion with respect to plaintiff's failure to intervene claim against Schweizer and Pross under § 1983.  The Motion is granted with respect to plaintiff's failure to intervene claim against Szelagowski because a single defendant cannot be liable for both excessive force and failure to intervene where the "alleged use of excessive force is a single, indivisible assault," as in this case.  *Walker v. City of N.Y.*, 638 F. App'x 29, 32 (2d Cir. 2016).

Defendants further argue in their Motion that there is no authority to support the existence of a Pennsylvania common law cause of action for an officer's "failure to intervene" (Count 15).  Defs.' Mot. 8 n.3.  In responding to defendants' Motion, plaintiff fails to address this argument.  Accordingly, he has abandoned his state law failure to intervene claim.  *See Campbell v. Jefferson Univ. Physicians*, 22 F. Supp. 3d 478, 487 (E.D. Pa. 2014) ("[W]hen a plaintiff responds to a defendant's summary judgment motion but fails to address the substance of any challenge to particular claims, that failure constitutes an abandonment of those causes of action and essentially acts as a waiver of these issues.").  The Court thus grants defendants' Motion with respect to plaintiff's state law failure to intervene claim against Schweizer, Pross, and Szelagowski.

### E.  Conspiracy (Counts 12 & 13)

Defendants contend that, to prevail on his conspiracy claims, plaintiff must prove the alleged conspirators "reached an understanding" and had a "meeting of the minds" to deprive him of his constitutional rights.  Defs.' Mot. 8-9.  Defendants argue plaintiff has adduced no evidence of such an understanding.  *Id.* at 9.  Plaintiff responds that his conspiracy claims are supported by evidence that shows that defendants communicated via radio and agreed to serve as back-up to Schweizer.  Pl.'s Resp. 10.

"To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)).  After a plaintiff establishes that the object of a conspiracy was the deprivation of a federally protected right, "the rule is clear that" the plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Id.* at 295.  In the absence of direct proof, a plaintiff may rely on circumstantial evidence from which a factfinder can infer a "meeting of the minds" or an "understanding or agreement to conspire." *Id.*  In the context of an alleged conspiracy among police officers, such circumstantial evidence may consist of "'conversations' between officers about the incident, 'allegedly distorted' stories that 'emerged,' an 'awareness of conflicting stories' and 'irregularities in the series of official investigations' into the incident." *Id.* (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 627-28 (7th Cir. 1979), *rev'd in part on other grounds by Hanrahan v. Hampton*, 446 U.S. 754 (1980)).

Similarly, to prove a claim of civil conspiracy under Pennsylvania law, the plaintiff must show "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003).  "The existence of a conspiracy may be proved by circumstantial evidence, but mere suspicion or the possibility of a guilty connection is not sufficient." *Kilbride Investments Ltd. v. Cushman & Wakefield of Pa., Inc.*, 294 F.Supp.3d 369, 379 (E.D. Pa. 2018) (DuBois, J.).  The absence of evidence supporting a meeting of the minds is also fatal to a conspiracy claim under Pennsylvania law. *See, e.g.*,

18

*Lawson v. City of Coatesville*, 42 F. Supp. 3d 664, 685 (E.D. Pa. 2014) (granting summary judgment were plaintiff provided no evidence that defendant officers "made an agreement 'with intent to do an unlawful act.'").

In response to defendants' Motion, plaintiff cites no evidence of a conspiracy—circumstantial or direct—other than the mere fact that defendants communicated by radio.  Pl.'s Resp. 10.  Instead, plaintiff reiterates his allegations that Schweizer lied about his observations, Szelagowski falsely claimed narcotics were recovered, and Pross falsely claimed that those substances tested positive for illicit narcotics.  *Id.*  Such allegations are insufficient to create a genuine dispute of material fact as to the existence of a conspiracy among the defendant officers.  Plaintiff has adduced none of the types of evidence described by the Third Circuit as sufficient to support such a claim, such as "'conversations' between officers about the incident, 'allegedly distorted' stories that 'emerged,' an 'awareness of conflicting stories' and 'irregularities in the series of official investigations' into the incident."  *Id.* at 295.  Nor is there evidence that defendants entered into an agreement with the intent to do an unlawful act—as is required under Pennsylvania law.  *Lawson*, 42 F. Supp. 3d at 685.

Based on all of the foregoing, the Court grants defendants' Motion with respect to plaintiff's conspiracy claims under § 1983 and state law.

### F.  *Monell* Claim (Count 16)

With regard to plaintiff's *Monell* claim against the City, defendants first contend that plaintiff has failed to establish an underlying constitutional violation.  Defs.' Mot. 12.  Defendants next argue that plaintiff has not adduced any evidence of a municipal custom or policy or of deliberate indifference on the part of a municipal policymaker.  *Id.* at 12-13, 17.  According to defendants, there is no evidence that demonstrates "deficiency in PPD training,

supervision, or discipline." *Id.* at 14.  In response, plaintiff argues that Schweizer's disciplinary record demonstrates that the City "was deliberately indifferent to persons such as Plaintiff when they failed to previously terminate, reassign, or otherwise discipline Defendant Schweizer."  Pl.'s Resp. 13.  Plaintiff cites "3 different occasions since 1999 whereby Defendant Schweizer exhibited lying, racist and/or other similar actions, which clearly was an abuse of his authority." *Id.* at 13-14.  Specifically, plaintiff points to the incidents in 1999, 2004, and 2008 when Schweizer was disciplined.  *Id.* at 14, 16.  Plaintiff contends that these incidents and Schweizer's continued role in leading narcotics surveillance operations "show the Police Department failed to adequately train, supervise, and discipline" him and represent "a pattern of deliberate indifference on the part of numerous chiefs of police who are official policy-makers for the City of Philadelphia."  *Id.* at 14-15.  The Court agrees with defendants that plaintiff's evidence fails to demonstrate deliberate indifference for failure to train, supervise, or discipline Schweizer.

"[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978).  As the Third Circuit explained in *Forrest v. Parry*, "a § 1983 claim against a municipality may proceed in two ways."  930 F.3d 93, 105 (3d Cir. 2019).  A plaintiff must demonstrate either (1) "that an unconstitutional policy or custom of the municipality led to his or her injuries," or (2) "that [his or her injuries] were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice."  *Id.*  For claims "predicated on a failure or inadequacy," the plaintiff must demonstrate that the failure or inadequacy amounts "to deliberate indifference on the part of the municipality."  *Id.* at 106; *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989) (discussing necessity of proving "deliberate indifference").

The Court first considers the evidence supporting plaintiff's claims of deliberate

indifference based on the alleged failure to discipline.  It then turns to the evidence relating to the claimed failure to train or supervise.

### 1.  Failure to Discipline

"[A] city may be liable for its failure to discipline an officer after multiple complaints against him, particularly where the prior conduct which the officer engaged in is similar to the conduct which forms the basis for the suit."  *McDaniels v. City of Phila.*, 234 F. Supp. 3d 637, 645 (E.D. Pa. 2017) (quoting *Wnek v. City of Phila.*, No. 05-3065, 2007 WL 1410361, at *3 (E.D. Pa. May 10, 2007)).  In support of such claims, "it is not enough for the plaintiff to establish merely that the disciplinary process was inadequate."  *Id.* at 645.  Rather, "the plaintiff must show that the city's failure amounted to 'deliberate indifference to the rights of persons with whom the police come into contact.'"  *Id.* (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996)).

In *Beck v. City of Pittsburgh*, the seminal failure-to-discipline case in the Third Circuit, the police officer whom plaintiff accused of using "excessive force against him while making an arrest" had been subject to five citizen complaints for excessive use of force in less than five years.  89 F.3d 966, 967, 972 (3d Cir. 1996).  Although the complaints were resolved unfavorably for the complaining citizen, the Third Circuit concluded that, "[b]ecause the complaints . . . came in a narrow period of time and were of a similar nature, a reasonable jury could conclude that the Chief of Police knew, or should have known of [the officer's] propensity for violence when making arrests."  *Id.* at 973

In this case, plaintiff has not adduced evidence of multiple complaints against Schweizer based on conduct "similar to the conduct which forms the basis for the suit."  *McDaniels*, 234 F. Supp. 3d at 645.  Nor has he provided evidence of similar complaints that "came in a narrow

period of time." *Beck*, 89 F.3d at 973.  Even assuming *arguendo* that the 1999 incident did

involve a false report that Corey Porter was observed selling drugs and sitting next to a person

selling drugs, that is the only incident in roughly 20 years that is similar to the conduct alleged in

this case.  Moreover, while plaintiff argues that the City is liable for the failure to terminate

Schweizer's employment, he has offered no evidence that the city's disciplinary process is

flawed.  *See Talley v. City of Phila.*, No. 08-330, 2010 WL 11552957, at *3 (E.D. Pa. Feb. 23,

2010) (granting summary judgement for the City where "[p]laintiff [did] not offer[ ] evidence to

establish deliberate indifference . . . . Plaintiff [did] not offer experts or statistics; [did] not

demonstrate[ ] ongoing constitutional violations by the department; and [did] not offer evidence

of a flawed internal affairs investigation system where complaints [were] not tracked, as was the

case in *Beck*").  Plaintiff does not "present any evidence that the [City's] investigation process

was flawed other than [his] own allegations."  *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 344

(E.D. Pa. 2006).

Accordingly, the Court concludes that plaintiff's evidence fails to establish deliberate

indifference on the part of the City based on a failure to discipline Schweizer.

### 2.    *Failure to Train or Supervise*

"To demonstrate deliberate indifference where a plaintiff claims failure to train or

supervise, the plaintiff must ordinarily show a 'pattern of similar constitutional violations by

untrained employees."  *Buoniconti v. City of Phila.*, 148 F. Supp. 3d 425, 440 (E.D. Pa. 2015)

(quoting *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014)).  However, courts have

recognized that "a single incident may evince deliberate indifference when 'the need to train

officers . . . can be said to be so obvious' in itself and the lack thereof would predictably lead to

recurrent rights violations."  *Watson v. Witmer*, 183 F.Supp.3d 607, 614 (M.D. Pa. 2016)

(quoting *City of Canton*, 489 U.S. at 390 n.10).  "If a plaintiff is able to meet the stringent standard for deliberate indifference, the plaintiff must then demonstrate that the failure to train proximately caused his constitutional injury by identifying a particular failure in a training program that is 'closely related to the ultimate injury.'"  *Buoniconti*, 148 F. Supp. 3d at 441 (quoting *City of Canton*, 489 U.S. at 391).

In this case, plaintiff's claim of deliberate indifference on the part of the City is based on a pattern of incidents involving Schweizer.  Pl.'s Resp. 13-15.  Notwithstanding plaintiff's attempt to broadly characterize Schweizer's prior disciplinary incidents as "abuse[s] of authority" during which Schweizer "exhibited lying, racist and/or other similar actions," Pl.'s Resp. 13-14, the Court concludes that the documented false report made by Schweizer in 1999, abusive language used by Schweizer in 2004, and racist stickers found in 2008 do not represent a "pattern of similar constitutional violations."  *Thomas*, 749 F.3d at 223.  Moreover, plaintiff fails to identify "a particular failure in a training program that is 'closely related to the ultimate injury.'"  *Buoniconti*, 148 F. Supp. 3d at 441 (quoting *City of Canton*, 489 U.S. at 391).

Accordingly, the Court concludes that plaintiff's evidence fails to establish deliberate indifference on the part of the City based on a failure to train or supervise Schweizer.

### 3.  *Conclusion*

Based on all of the foregoing, the Court grants defendants' Motion with respect to plaintiff's *Monell* claim (Count 16).  As plaintiff has failed to establish *Monell* liability under § 1983, the City shall be terminated as a defendant.  *See Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) ("There is no *respondeat superior* theory of municipal liability, so a city may not be held vicariously liable under § 1983 for the actions of its agents.").

### G.  Remaining Claims Against Defendant Officer Pross

Defendants contend that judgment should be granted in Pross's favor on all claims brought against him because plaintiff has adduced no evidence Pross was involved in any of the alleged constitutional violations.  Defs.' Mot. 7.  In response, plaintiff contends that Pross' personal involvement is demonstrated by his testimony that he field-tested all narcotics allegedly recovered in the investigation, which gave "the conclusive probable cause to detain and recommend criminal prosecution."  Pl.'s Resp. 8; Pross Dep. 20.  Plaintiff also argues that Pross was in the vehicle "assisting" Schweizer with his investigation of plaintiff.  *Id.* at 8.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of *respondeat superior*.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive."  *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995)).

Pross testified that he saw plaintiff upon arriving at the 3000 block of Ella Street with Schweizer, but did not observe any of the alleged narcotics sales.  Pross Dep. 12:10-13:14, 14:20-23.  Pross described his role as that of a lookout, making sure he and Schweizer were "safe" in their unmarked vehicle.  *Id.* at 14:24-15:10.  Pross further testified that Schweizer did not talk to him about his observations, and he could not recall the contents of any radio communications between the other officers involved in the investigation.  *Id.* at 16:6-17:7. Moreover, Pross never exited his vehicle during the investigation and did not see plaintiff's

arrest.  *Id.* at 17:8-22, 19:5-7.  Although Pross testified that he field-tested the narcotics

recovered in the investigation by administration of a Narcotics Identification Kit ("NIK") test,

*Id.* at 20:8-21:2, that testing did not occur until the end of the investigation, Szelagowski Dep.

18:3-24.

The Court next considers whether plaintiff's evidence supports Pross' personal

involvement in the remaining claims against him: false arrest under § 1983 (Count 3), false

imprisonment under § 1983 and state law (Counts 9 & 10), unjustified search and seizure under §

1983 (Count 11), and malicious prosecution under § 1983 and state law (Counts 1 & 2).

*1.  False Arrest*

Liability for false arrest under § 1983 is "not limited to the arresting officer himself" and

"extends to any other officer 'whose intentional actions set the arresting officer in motion.'"

*Berg v. Cty. of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000).  However, "where an officer merely

provides information and neither participates in the arrest, nor directs others to effectuate the

arrest, he cannot be liable for false arrest."  *Miller v. Cty. of Allegheny*, No. 05-733, 2006 WL

3332809, at *8 (W.D. Pa. Nov. 16, 2006).  In this case, there is no evidence that Pross

participated in the arrest or directed others to effectuate the arrest.  As Szelagowski testified, the

field testing of narcotics did not occur until the end of the investigation, Szelagowski Dep. 18:3-

24, and thus it could not have provided the probable cause to arrest plaintiff.  Nor is there

evidence that Pross had "actual knowledge of and acquiescence in the wrongful conduct"

allegedly committed by the other officers.  *Chavarriaga*, 806 F.3d at 222 (citing *Rode*, 845 F.2d

at 1207).  The Court does not infer such knowledge in this case, considering that Pross testified

he did not observe the alleged narcotics transactions, had no discussions with Schweizer

concerning his observations, did not remember the other officers' radio communications, and did

not see plaintiff's arrest.  Pross Dep. 14:20-23, 16:6-17:7, 17:8-22, 19:5-7.

The Court thus grants defendants' Motion on plaintiff's remaining false arrest claim under §1983 (Count 3) against Pross.

### 2.  *False Imprisonment*

To establish a false imprisonment claim under § 1983, a plaintiff must show "(1) he was arrested (2) without probable cause and (3) detained pursuant to that arrest." *Bynum v. Trustees of the Univ. of Pa.*, No. 15-1466, 2017 WL 68576, at *6 (E.D. Pa. Jan 6, 2017).  The claim of false imprisonment thus turns on "whether there was probable cause for the arrest." *Id.*  Indeed, courts have recognized that the claims of false arrest and false imprisonment under § 1983 are "nearly identical" and "often analyze the claims together." *Wilson*, 977 F.Supp.2d at 456 (quoting *Brockington v. City of Phila.*, 354 F.Supp.2d 563, 570 n.8 (E.D. Pa. 2005). Accordingly, courts have held that, where there is no evidence to support an officer's involvement in a plaintiff's arrest, there is likewise insufficient evidence to support a claim of false imprisonment against that officer.  *See, e.g.*, *Brown v. Brown*, 2008 WL 650021, at *4 (E.D. Pa. Mar. 10, 2008) (granting summary judgment on false imprisonment claim where plaintiff adduced no evidence establishing the defendant's "personal involvement in her arrest."); *Eason v. Alexis*, 824 F. Supp. 2d 236, 243 (D. Mass. 2011) (granting summary judgment on false imprisonment claims where there were no claims that the officers "arrested or confined" the plaintiff).  Similarly, under Pennsylvania law, an officer "is liable for false imprisonment when he causes the false arrest of another person." *See Walker v. Spiller*, 54 F. Supp. 2d 421, 427 (E.D. Pa. 1999) (quoting *Renk v. City of Pittsburgh*, 641 A.2d 289, 295 n.2 (Pa. 1994) (Montemuro, J. dissenting)).  In cases where courts have dismissed false arrest claims but sustained false imprisonment claims, it is based on evidence that, though the defendant officer

did not participate in the arrest, he later provided critical information that "directly led to [the plaintiff's] imprisonment."  *Cox v. Hackett*, No. 05-2260, 2006 WL 2129060, at *6 (E.D. Pa. July 27, 2006).

As discussed *supra*, there is no evidence that Pross participated in or caused the arrest of plaintiff.  While Pross conducted the NIK testing of narcotics recovered during the investigation, the record reflects that this testing did not occur before plaintiff was arrested by Szelagowski and thus did not provide probable cause for plaintiff's arrest or directly lead to his imprisonment. The Court concludes that Pross' testing of narcotics recovered by other officers is not sufficient to establish his personal involvement in the alleged false imprisonment.  The Court thus grants defendants' Motion with respect to plaintiff's false imprisonment claims under § 1983 and state law (Counts 9 & 10) against Pross.

### 3.  Unjustified Search and Seizure

Courts have held that a defendant "cannot be held liable for conducting an unreasonable search and seizure that he did not participate in."  *Swope v. City of Pittsburgh*, 90 F.Supp.3d 400, 411 (W.D. Pa. Feb. 5, 2015); *see also Hicks v. City of Buffalo*, 124 F. App'x 20, 23 (2d Cir. 2004) (granting summary judgment in favor of defendants for whom there was no evidence they were involved in the alleged searches and seizures).  In this case, there is no evidence that Pross participated in the search and seizure.  Moreover, as discussed *supra*, there is no evidence that Pross had "actual knowledge of and acquiescence in the wrongful conduct" allegedly committed by the other officers and the Court does not infer such knowledge based on the record evidence. *Chavarriaga*, 806 F.3d at 222 (citing *Rode*, 845 F.2d at 1207).

The Court thus grants defendants' Motion with respect to plaintiff's alleged unjustified search and seizure claim under § 1983 (Count 11) against Pross.

### 4.  Malicious Prosecution

An officer may be "considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion."  *Henderson v. City of Phila.*, 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012).  However, there is no evidence that Pross falsified his field tests and his test results were not contradicted by laboratory testing.  Szelagowski Dep. 19:1-11, *see, e.g.*, *Goss v. Bd. of Cty. Com'rs of Creek Cty.*, 645 F. App'x 785, 791-92 (10th Cir. 2016) (affirming summary judgment where there were no reasonable inferences that the defendant falsified the field test).  Accordingly, there is no evidence to support Pross' personal involvement in the alleged malicious prosecution.  *See, e.g.*, *Wilson v. Dewees*, 977 F. Supp. 2d 449, 458 (E.D. Pa. 2013) (granting summary judgment on malicious prosecution claims under § 1983 and Pennsylvania law where there was no evidence "suggesting that [the officer] made false or misleading statements to prosecutors or otherwise interfered with the criminal proceedings against Plaintiff.").

The Court thus grants defendants' Motion with respect to plaintiff's malicious prosecution claim under § 1983 and state law (Counts 1 & 2) against Pross.

### 5.  Conclusion

Based on all of the foregoing, the Court grants defendants' Motion with respect to the remaining claims asserted against Pross—false arrest under § 1983 (Count 3), false imprisonment under § 1983 and state law (Counts 9 & 10), unjustified search and seizure under § 1983 (Count 11), and malicious prosecution under § 1983 and state law (Counts 1 & 2).

## V.    CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment is granted in part

and denied in part.  The Court grants defendants' Motion with respect to plaintiff's false arrest claim under state law against all defendants (Count 4), plaintiff's conspiracy claims under § 1983 and state law against all defendants (Counts 12 & 13), plaintiff's failure to intervene claims under § 1983 and state law against all defendants (Counts 14 & 15), and plaintiff's *Monell* claim against the City (Count 16).  The Court grants defendants' Motion with respect to all other claims asserted against Pross—excessive force under § 1983 (Count 5), battery under state law (Count 6), assault under § 1983 and state law (Counts 7 & 8), false arrest under § 1983 (Counts 3 & 4), false imprisonment under § 1983 and state law (Counts 9 & 10), unjustified search and seizure under § 1983 (Count 11), and malicious prosecution under § 1983 and state law (Counts 1 & 2).  All state law claims asserted against the City (Counts 2, 4, 10, 13, & 15) are marked withdrawn with prejudice by agreement of plaintiff.  The caption is amended so as to delete reference to the City of Philadelphia and Erik Pross as defendants.

Plaintiff's remaining claims are as follows: malicious prosecution under § 1983 and state law as to Schweizer and Szelagowski (Counts 1 & 2); false arrest under § 1983 as to Schweizer and Szelagowski (Count 3); excessive force under § 1983 as to Szelagowski only (Count 5); battery under state law as to Szelagowski only (Count 6); assault under § 1983 and state law as to Szelagowski only (Counts 7 & 8); false imprisonment under § 1983 and state law as to Schweizer and Szelagowski (Counts 9 & 10); and unjustified search and seizure under § 1983 as to Schweizer and Szelagowski (Count 11).

An appropriate order follows.[6]

---

[6] The parties requested that parts of their motion papers be filed under seal but said nothing about sealing any part of the Court's opinion.  Should either party conclude that parts of the opinion should be sealed, the parties shall submit to the Court an agreed-upon sealing order.